W. J. Stevens et al. v. J. L. Karr.

No. 4962.   Decided December 20, 1930.

(33 S. W., 2d Series, 725.)

*Dibrell & Snodgrass* and *J. B. Dibrell, Jr.,* for plaintiffs in error.

"To entitle him to a commission where no sale is actually consummated, a broker employed to find a purchaser must either produce to the owner a customer who is able, ready and willing to buy on the terms prescribed by the owner, or else take from the customer a binding contract of purchase, unless these requirements are waived by the principal's refusing to proceed after notice by the broker that he has such a contract or purchaser." 9 C. J., 604.

Such is the rule announced in the case of Moss & Raley v. Wren, 102 Texas, 567, 120 S. W., 847, and an unbroken line of decisions in our State since that pronouncement. Simpson v. Early, 137 S. W., 378, in which writ of error was denied by the Supreme Court; Carter v. Smith, 184 S. W., 244; Hamburger & Dreyling v. Thomas, 103 Texas, 284, 126 S. W., 561; Redwine v. Hudman, 104 Texas, 21, 133 S. W., 426; Western Union Tel. Co. v. Southwick, 214 S. W., 987; Nelson v. Butler, 190 S. W., 811; Huffhines v. Bourland, 280 S. W., 561-2; Middleton v. Moore, 289 S. W., 1045; Griffith v. Bradford, 138 S. W., 1072; LaPrelle v. Brown, 220 S. W., 151.

Since the case of Moss & Raley v. Wren, it has been uniformly held that where the contract requires the seller, at the option of the buyer, to accept a certain sum as liquidated damages in lieu of the buyer's performance of the contract, that a mere option to purchase is created and that if the buyer so elects, the seller cannot enforce specific performance and therefore the broker cannot exact a commission. The basis of liability is that the broker has performed the services and effected the results which he undertook under his contract of employment, and that the party employing him cannot defeat his right to compensation by electing not to carry out a contract of sale in keeping with the terms of the employment.

In the case at bar, there is no pretense in pleadings or evidence that the defendants employed the plaintiff to do anything. All that the plaintiff contends that they agreed to do was to pay the broker's commission as a part of the consideration for the land in the event that they bought it. Where land is listed with a broker for sale, the purchaser ultimately pays the commission whether directly to the broker or to the seller because if not directly to the broker, it is included in the selling price. The fact, if it be a fact in this case, that the defendants impliedly agreed to pay the broker's commission, does not put them in the relation to the broker of the principal to agent or employer to employee.

*Jenkins & Miller,* for defendant in error.

There being no express agreement to pay commission the only question arising as to whether or not plaintiff alleged a cause of action depends upon whether or not under the circumstances alleged law and equity would imply a contract and obligation on the part of the defendants to pay plaintiff for his services. This question, we think, must be answered in the affirmative. 9th C. J., 557, 587; Harris v. Van Vraken, 155 N. W., 65; Goode v. Sears, 226 S. W., 463; Huff v. McMichael, 127 S. W., 574; Coleman v. United States, 152 S. W., 99; Taylor v. Deserve, 81 Texas, 251; Simkins on Contracts, p. 368.

Where a broker procures a purchaser to enter into a written contract of purchase and sale of real estate capable of being specifically enforced by the party liable for commissions he has earned his commission and such party cannot by repudiating his contract relieve himself of liability to such broker for his commissions; and in this case the plaintiff in error having secured for defendants in error a written contract for the purchase of the Coggin Ranch which

contract they could have specifically enforced, they could not by repudiating said contract avoid liability to the plaintiff in error for brokers commissions and the court erred in instructing a verdict in favor of the defendants in error.

The naming or fixing of an amount as liquidated damages in a contract for the sale of land, in case of breach, does not render such contract an option or incapable of specific performance, but in all such cases the circumstances, conditions, surroundings and the contract itself must be looked to to determine the intention of the parties. If the intention of the parties was to make a sale and the naming of damages was in the nature of a penalty to secure the enforcement of the contract, or to avoid the difficulty of proving the amount of damages under the circumstances, there is no option. And such contracts will be construed as options, only where it is shown that such was the intention of the parties. That is, that one of the parties had the option to complete the contract or not and that the parties did not consider the contract as a sale or purchase until such option was exercised. Moss v. Wren, 102 Texas, 567, 113 S. W., 739, 120 S. W., 847; Redwine v. Hudman, 133 S. W., 426; Griffith v. Bradford, 138 S. W., 1072; LaPrelle v. Brown, 220 S. W., 152; Rabinowitz v. N. T. Realty Co., 270 S. W., 579; McAdams v. Burdin, 232 S. W., 343.

Mr. Commissioner SHARP delivered the opinion of the court.

J. L. Karr instituted this suit in the District Court of Coleman County against W. J. Stevens, T. L. Stevens and F. E. Stevens, to recover a broker's commission, alleging in substance that the Coggin Ranch situated in Brown county was listed with him for sale for $20.00 per acre net to the owner; that Hubert Shore, who lived at Coleman, assisted him in the matter; that they interested defendants in the purchase of the land, advising them that the price of the land was $20.00 per acre net to the owner and that their commission would have to be paid by the purchaser in addition to the net price per acre quoted; that Ben F. Stone, executor, who held legal title to the land, also advised defendants that the price for the land was $20.00 per acre net to the owner and the broker's commission in addition thereto.

That defendants, after being so advised, sought, obtained, and accepted the services of the plaintiff in showing them the land and bringing them and the owner together and assisting in negotiating and making the sale by the owner to the defendants; that as a result of the plaintiff's efforts a written contract was entered into by

defendants with B. F. Stone, executor, whereby the latter sold the land and obligated himself to make proper conveyance of same; that by reason thereof, the defendants obligated themselves to pay to plaintiff and Hubert Shore the usual and customary broker's commission of 5%; that defendants in some way settled with Hubert Shore and this suit is by plaintiff for one-half of the usual and customary commission of 5%.

Defendants answered by general and special exceptions and by a general denial. Defendants of their own volition refused to pay the purchase price and to accept conveyance of the land and contend that said contract was a mere option contract. At the close of the evidence, the defendants requested of the court a peremptory instruction on their theory that no sale had been made, but merely an option of contract had been entered into. The trial court accepted their view and instructed a verdict for them. Plaintiff excepted to the court's charge and requested certain issues to be submitted to the jury, all of which the trial court overruled. An appeal was made to the Court of Civil Appeals and the cause reversed and remanded for another trial. 297 S. W., 287.

For convenience we will refer to J. L. Karr as plaintiff and W. J. Stevens, T. L. Stevens and F. E. Stevens as defendants as was done in the trial court.

By contract dated April 9, 1925, between Ben F. Stone, independent executor and trustee under the will of Mrs. Mattie R. Coggin, as first party, and W. J. Stevens, T. L. Stevens and F. E. Stevens, as second parties, it is agreed that Stone would sell and convey to the Stevens 6,248 acres of land known as the Coggin Clear Creek Ranch in Brown County, for a consideration of $20.00 per acre, aggregating the sum of $124,960, one-fourth of which was to be paid in cash and the remainder to be paid in installments secured by a vendor's lien on the land.

The contract further provides:

"As evidence of their good faith, Second Parties have this day placed in the Coggin National Bank, Brownwood, Texas, United States Government bonds of the face value of $5000.00, and it is understood and agreed that a copy of this contract shall be placed in said bank and that in the event Second Parties shall fail or refuse to comply with their agreement as hereinbefore set out to purchase said lands and premises without any transfer on the part of the First Party, that the said government bonds shall be delivered by said bank to First Party and shall be accepted by him as his full liquidated damages for breach of said contract by Second Parties,

and it is further expressly agreed that if First Party shall breach the foregoing contract and refuse to complete the sale of said lands and premises to Second Parties, that Second Parties shall be entitled to recover as their liquidated damages by reason of such breach of contract from the First Party, the sum of $5000.00, which is hereby agreed upon as the amount of damages that will be sustained by Second Parties through breach of this contract by the First Party."

Daniel Baker College was beneficiary of the will of which Ben F. Stone was executor. The testimony offered by plaintiff upon this phase of the case is substantially as follows:

J. L. Karr in his first conversation with W. J. Stevens late in the fall of 1924 stated that he had learned through Hubert Shore that Stevens was interested in the Coggin Ranch and he told him about the ranch and he became interested in it. He further told him about its location and improvements and that it had to net the College $20.00 per acre and that the purchaser would take care of the commission. Afterwards Stevens came down to look at the ranch and Karr went out to the ranch and drove over it with him. Tom Stevens came down later and looked over the ranch with Stone and others.

J. L. Livingston, a witness for plaintiff, testified in substance, that he was with Karr when he had a conversation with W. J. Stevens relative to the price of the land and that Karr stated to W. J. Stevens that it took $20.00 an acre net to the College and that the purchaser would have to pay the commission.

Hubert Shore, in substance, testified that he stated to Will Stevens that it would take $20.00 per acre net to the College to buy the land and that the commission would come in addition to that price.

W. J. Stevens, one of the defendants, testified, in substance, that he knew Karr and Shore were expecting him and his brothers to pay them a commission and that the price of the land was $20.00 net to the College.

It was after this conversation that they executed the written contract and that all parties understood that the College was not to pay any commission; that the parties entered the contract knowing that Karr and Shore were expecting the defendants to pay a commission.

T. L. Stevens testified in substance that the reason they repudiated the contract was because they felt like they had made a bad trade. The record shows that the defendants paid to Stone, the executor,

the $5,000 deposited in the bank in lieu of performance of the terms stipulated in the contract.

In view of the record in this case plaintiff contends:

(a) Where a good cause of action is alleged and sufficient evidence is offered to sustain the material allegations in the petition, it is error for the court to refuse to submit the issues to the jury.

(b) Where both pleadings and proof on the part of plaintiff raise issues sufficient to sustain and support the relief prayed for, it is error for the court to give a peremptory instruction in favor of the defendants.

(c) Where a broker procures a purchaser to enter into a written contract of purchase and sale of real estate capable of being specifically enforced by the party liable for the commission, he has earned his commission and such party cannot by repudiating his contract relieve himself of liability to such broker for his commission.

(d) When a contract for the purchase of land is capable of being specifically enforced, it is not an option contract.

Defendants contend that the action of the trial court in instructing a verdict for them was correct for the following reasons:

(a) Because they did not actually buy the land and did not finally consummate the contract of purchase.

(b) Because the contract made was a mere option to buy and not a binding contract of sale capable of being specifically enforced and that by the terms of the contract they had the right to pay the sum stipulated therein in lieu of performance and end their liability under the contract.

With reference to the rights of a broker to recover a commission from either the seller or purchaser for services rendered, the following rules are well established:

(1) "A commission ordinarily becomes payable on completion of the transaction which the broker was employed to negotiate, unless there is a stipulation in the contract of employment to the contrary. If by the contract of employment the broker is merely to find a customer who is able, ready, and willing to enter into a transaction with the principal on the terms prescribed by him, the broker is entitled to compensation on performing that service, whether or not the principal completes the transaction. Thus a broker employed to find a purchaser or a vendor or to exchange lands ordinarily becomes entitled to a commission on the execution of a contract of purchase or sale or exchange, although without any fault on the part of the broker the contract is never carried out,

unless there is a stipulation, express or implied, making his right to compensation depend on the performance of the contract or the happening of some other event." 9 C. J. p. 591, sec. 86b.

(2) "A broker employed to find a purchaser or seller is not entitled to a commission where no sale is made, unless the purchaser or seller is able, ready, and willing to take or to sell the property on the terms specified by the principal, although this general rule is subject to exceptions depending on the facts of the particular case, as where the broker effects a sale with a person designated by the principal, or where the broker acts in good faith, and the principal accepts his customer and enters into a contract with him, in which case the question of the customer's ability, readiness, and willingness is no longer open to question. On producing a person who is ready, able, and willing to take the property on the terms prescribed, the broker becomes entitled to a commission whether or not a sale is consummated, unless the failure to consummate the sale is due to the fault of the broker, or unless he waives his right to his commission." 9 C. J. p. 595, sec. 87 (2).

(3) "The employment and consequent agreement to pay commissions may also be implied from the circumstances, as where the principal accepts the benefits of the broker's services with the knowledge that he expects to be paid therefor, or where he places property in the hands of the broker for sale, and a sale is made through the efforts of the broker." 9 C. J. p. 556.

In the light of the foregoing well settled rules, we will examine the facts of this case in order to ascertain if the contention made by plaintiff that he is entitled to the commission sued for is sound and tenable. The evidence introduced tends to show that plaintiff had listed with him for sale by the owner the Coggin Ranch at a price of $20.00 per acre net to Daniel Baker College; that he interested the defendants in the purchase of same; that he stated to them that the land could be purchased for $20.00 per acre net to the College and they pay in addition thereto the broker's commission; that they availed themselves of his services by having him show them the land and entered into a contract for the purchase of same at $20.00 per acre, after their conversation with the broker that they were expected to pay him a commission for his services.

It is further shown by the record that the owner was able, ready and willing to deed them the land in compliance with the terms of the contract and would have done so if the defendants had not refused to carry out the terms thereof by preferring to pay the $5,000 stipulated therein in lieu of performance.

An analysis of the contract discloses that the defendants bound the seller to accept the $5,000 placed in the Coggin National Bank in full settlement of his liquidated damages for breach of the contract by the defendants, but the binding rule applied to the owner by the buyers does not prevail in the contract as to the rights of the defendants in the event that the owner breaches his part of the contract. In that part of the contract it is not stated that they would be compelled to accept any sum in full settlement of the damages sustained by them as was done with reference to the owner.

It is earnestly contended by the defendants that the facts of this case bring it clearly under the rule announced by the Supreme Court in the case of Moss & Raley v. Wren, 102 Texas, 567, 113 S. W., 739, and that the trial court was correct in giving the instruction as was done. We cannot agree to this contention. In that case Wren employed Moss and Raley to make a sale of some land belonging to him and agreed to pay them a broker's commission if they furnished a purchaser able, ready and willing to buy the land. They did interest a purchaser. But the contract made by the purchaser with the seller contained the following stipulation:

"And it is further mutually agreed in case purchaser fails to comply with the terms hereof relating to the payment and securing of the purchase price as above mentioned and by the time herein designated, purchaser shall forfeit the amount paid hereon to seller and the same shall be paid to seller by said trustees and accepted by said seller as and for liquidated damages for such injury and damage as the seller may suffer by reason of the nonperformance of this contract on the part of the purchaser."

In the Wren case the seller was held not liable in a suit to recover the broker's commission because the seller was not in a position to enforce specific performance of the contract. In the instant case the buyers had not bound themselves to accept liquidated damages as their only remedy in the event of a breach of the contract by the seller, and the buyers were entitled, if they so elected, to compel conveyance of the title to the land. It is wholly unnecessary for us to decide whether the buyers would have been liable under the facts of the case had they, like Wren, been in no position to secure specific performance of the contract. On that question we express no opinion. In the light of the facts of this case as distinguished from the facts in the Wren case, supra, that case furnishes no rule controlling the decision of the court in this case.

In the case of Redwine v. Hudman, 133 S. W., p. 426, Judge Williams rendering the opinion for the Supreme Court, in announcing

the rule controlling the construction of contracts pertaining to the rights of brokers, says:

"The principle which controls is well settled. It is thus stated: 'The question always is: What is the contract? Is it that one certain act shall be done, with a sum annexed, whether by way of penalty or damages, to secure the performance of this very act? Or is it that one of two things shall be done at the election of the party who has to perform the contract, namely, the performance of the act or the payment of the sum of money? If the former, the fact of the penal or other like sum being annexed will not prevent the court enforcing the performance of the very act, and thus carrying into execution the intention of the parties. If the latter, the contract is satisfied by the payment of a sum of money, and there is no ground for proceeding against the party having the election, to compel the performance of the other alternative.' Fry on Specific Performance, sec. 115. See, also, 36 Cyc. 571, 572. Whether a contract belongs to one class or the other depends on the intention deduced from a proper construction of the instrument in which the parties have expressed their agreement."

The contract entered into between the parties to this suit does not state that the broker's commission depended upon the final consummation of the deal. It is undisputed that the owner was ready, able and willing to comply with the contract and convey the land to the defendants; that it was the fault of the defendants that the contract was not fulfilled, they preferring to pay $5,000 in lieu of performance. Under this record we are of the opinion that if the defendants were informed by the broker that the terms of the sale included the payment of the broker's commission by the purchaser and they contracted for the land upon those terms, accepted the services of the broker in looking at the land and in making negotiations therefor with the owner—even if it could be said that there was no express contract made with reference to the payment of the broker's commission, there was an implied contract or agreement by reason of the facts herein stated and the purchaser became liable to the broker for his commission.

The rule is well settled that it is error to instruct a verdict when the evidence raises any material issue. In passing upon the question involving the right of the trial court to instruct a verdict, as was done in this case, the evidence must be considered most favorably in favor of the plaintiff and a peremptory instruction is warranted only when the evidence is such that no other verdict could have been rendered and that the defendants were entitled, as a matter

of law, to a judgment. If there is any conflicting evidence, either direct or circumstantial, in the record of a probative nature, the case is for the jury.

Under the facts of this case, we think the pleadings and proof raise the issue as to the liability of defendants to plaintiff for the commission claimed and that the contentions above stated made by the plaintiff are issues of fact to be submitted to the jury, and that, therefore, the trial court erred in instructing the jury to return a verdict for the defendants. The contentions urged by the defendants are overruled.

The judgment of the Court of Civil Appeals reversing the judgment of the District Court is affirmed, and the cause is remanded to the District Court for another trial in accordance with this opinion.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered thereon affirming the judgment of the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.