**WILT et ux. v. KELLOGG.**

No. 9745.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 18, 1936.

Rehearing Denied Dec. 17, 1936.

Kelley, Looney & Norvell, of Edinburg, for appellants.

Griffin & Kimbrough, of McAllen, for appellee.

BOBBITT, Justice.

Appellee filed suit against the appellants, Chas. N. Wilt and wife, Anna B. Wilt, in the form of an action in trespass to try title, in which he sought to recover of the appellants the title and possession of a tract of land in Hidalgo county, Tex., containing 44.12 acres, more or less. In the alternative appellee alleged that he had conveyed the land to appellant on June 28, 1929, re-taining a vendor's lien against said property to secure the payment of a promissory note of even date with said deed, for the principal sum of $3,000, due on or before five years from date.

Appellee alleged that only $180 had been paid on the obligation, and that as several installments of interest were past due and unpaid, and the taxes in default, he had exercised the option given him in said note of declaring the entire obligation due; and he therefore prayed for judgment on the amount unpaid on said note, interest, and attorney's fees, provided for therein, together with the foreclosure of his vendor's lien.

Appellants, in their first amended original answer, filed in reply to said petition, disclaimed any interest or claim in so far as the north 22 acres of said tract of land is concerned, but as to the south $22\frac{12}{100}$ acres thereof, the appellants filed a plea of not guilty.

In reply to the alternative plea of appellee, the appellants, in addition to a general demurrer and general denial, pleaded specially that the note and obligation sued on by the appellee had been fully paid off and discharged, in that during the month of December, 1931, the appellee and the appellant Chas. N. Wilt entered into an agreement whereby the said Wilt agreed to plant citrus trees on the north 22 acres of said land and care for the same for a period of two years, and further agreed to reconvey to the appellee the north half of said tract of land; that the appellee agreed that in consideration of having said north 22 acres set in citrus trees, he would cancel the debt and release the south 22 acres to appellant, free and clear of the lien. Appellants further alleged that they planted said north 22 acres in citrus trees and cared for the same for a period of over two years, under said agreement; that they had in all things complied with said contract, and were willing to recover the north 22 acres of said lot to the appellee, and prayed that title to the south 22 acres of the lot be vested in appellants, free and clear of all claims of the appellee.

The appellee's supplemental petition contained a general demurrer and general denial, and then by trial amendment appellee pleaded the statute of frauds against the contention of appellant, as it developed on the trial that the alleged special agreement upon which they relied was wholly in parol.

At the conclusion of the testimony, appellee filed his motion for a peremptory instruction, which was by the court refused.

The court then submitted this case to the jury upon one sole special issue, as follows:

"Do you believe and find from a preponderance of the evidence that in December, 1931, plaintiff and defendant, Charles N. Wilt, orally agreed that said defendant should set the north 22 acres, or the north half of the land in controversy to citrus trees, care for same for two years and reconvey said north half of said land to plaintiff, and that as consideration for the setting of said trees, said orchard care, and said reconveyance of said north 22 acres, or the north half of said land, plaintiff would release all liens and claims he held upon the south 22 acres, or the south half of the land in controversy, and grant to the defendant, Charles N. Wilt, the privilege of farming the land between the trees on the north half of said land? Answer 'yes' or 'no.'"

This special issue was answered by the jury in the affirmative.

The appellants filed a motion for judgment upon the verdict of the jury and the appellee filed a motion for judgment non obstante veredicto. The court granted appellee's motion for a judgment, notwithstanding the verdict, and on the 28th day of December, 1934, entered judgment in favor of appellee against appellants for the sum of $4,415, the amount due under the terms of the note, together with a foreclosure of a vendor's lien against the tract of land in controversy.

The appellants duly perfected their appeal, and the case is now before this court for review.

A review of the record in this case shows the following material facts and circumstances: Appellants in 1929 were the owners of certain property in the city of McAllen, against which they owed obligations. Appellee was the owner of the 44 acres of land here in question, which was free of debts and liens. Appellants decided to acquire a citrus and vegetable farm, and the trade or exchange of properties was agreed upon between them and the appellee. In order to clear the city property then owned by appellants of debts and liens, appellee loaned to appellants the sum of $3,000, and when the deed was executed and delivered by appellee to appellants conveying the land here in question, a vendor's lien in such amount was retained in such deed, to secure the payment. The exchange of properties was made; the appellants moved to the farm and started operations. They paid only one year's interest on the note owing to appellee. They were not able to keep up the payments, and appellee, an elderly man of small means, was indulgent and accommodating. The record shows that on one occasion he appealed to appellants to pay him a small portion of the past-due interest, as he needed the money with which to buy the necessities of life. Furthermore, appellants could not and did not pay the taxes assessed and due against the land, but they assessed all the property as being owned by them, even after they now contend it was orally agreed between them and appellee that appellee was the owner of one-half the farm. The record shows, and it is a condition and situation known to all men, that the years subsequent to 1929 were "lean and disastrous" for the farmers of our state and nation in particular, and for all people generally. The expense of operating this farm was high and the income therefrom was low. Appellants lived on and operated the farm, but they could not pay appellee the interest they owed him, and which he needed to sustain himself. As good friends at the time and mutually suffering neighbors, financially speaking, they "considered and conferred" in respect to their situation, and the record shows that the holder of the note, appellee, Kellogg, was no Shylock; he was most considerate of appellants. He repeatedly told appellants that he did not want the farm back; he tried to assist them in many ways, in addition to withholding action to foreclose his lien on a past-due obligation. He insisted that the taxes be paid, and tendered his assistance in all possible ways to help appellants and in an effort to properly safeguard his security. Appellants offered to deed the property back to appellee, since under the new, changed, and depression conditions, they could not pay either the debt, interest, or taxes. Appellee was under no obligation so to do, and he declined to take the property back. He was in no position to do so, and the record reveals no reason, in law or in business, why he should have done so. Finally, in 1934, nearly five years after he deeded the property, and after it appears that he had exhausted every reasonable effort, and en-

gaged in many helpful efforts to assist appellants, he filed this suit in an effort to protect his own interest.

In their answer and defense to such suit, appellants pleaded the defenses and allegations above stated, and undertook thereunder to establish the alleged oral agreement which they say was made between them and appellee in the year of 1931, whereby they were to be excused from paying the debt, as shown by the written instruments they executed; were to retain one-half the land and to reconvey to appellee the remaining one-half, in consideration of planting citrus trees, and caring for same for a period of time, and at the same time use such other one-half for farming purposes, between the rows of citrus trees. No written instrument or ageement of any kind was made at any of the times when such alleged parol contract was consummated, though it appears that such was suggested as being necessary and proper. Appellants did not allege, in their pleadings, that such purported agreement was in writing, and it developed on the trial that it was wholly in parol, if it were in fact made. At this juncture, the appellee properly filed his trial amendment and set up the bar of the statute of frauds. In their effort, and success before the jury, to establish the alleged oral agreement, under which they expected to set aside, discharge, satisfy, or have held for naught the written instruments duly executed between the parties, the appellants introduced into evidence the conversations, proposals, rejections of propositions, and other efforts experienced between the parties to solve their problems, which they now say were engaged in, on six separate and distinct occasions. They say that at the last conference or conversation that was held between the parties, the agreement relied upon by them in this suit was consummated.

▇ From all the testimony and evidence thus presented to the jury, the most material of which came from the interested parties themselves, the jury found that the oral agreement was, in fact made, as appellants alleged. If, for the reasons and under the law as contended by appellants, the written instruments executed by and between the parties can be satisfied, discharged, or invalidated by an agreement, wholly in parol, and if the evidence is sufficient to support the verdict of the jury, then the judgment non obstante veredicto of the trial court should be reversed. Oth-

erwise it should be affirmed. Article 2211, R.S.1925, as amended by Acts 1931, c. 77, § 1 (Vernon's Ann.Civ.St. art. 2211); Stevens v. Karr, 119 Tex. 479, 33 S.W.(2d) 725.

▇ When the pleadings of appellants are examined with care, and all the evidence offered in support thereof fairly analyzed, in the light most favorable to their contention, and consideration given to the burden resting upon the appellants in their undertaking to avoid, by parol evidence, the effect of the written instruments they executed, in regular order and in good faith, all of which we have tried to do, in view of the contentions here made, we are inclined to the opinion that the pleadings and the evidence in this case do not support the verdict of the jury. In view, however, of the disposition we feel must be made of the appeal on another question, we pretermit any further statement or discussion of the sufficiency of evidence to sustain the verdict of the jury in this instance.

▇ It is our opinion that the oral agreement as alleged and found by the jury to have been made in this case, even if supported by the pleadings and the evidence, falls with the bar of the statute of frauds, as alleged by appellee. Furthermore, it appears to be conclusive that under the most favorable construction the pleadings of appellants and the evidence offered in support thereof fall short of establishing any rule of equity which would or might relieve the appellants from the effect of such statute.

The written instrument executed by appellants, and here involved, is plain, simple, and definite. No charge of fraud on the part of any one concerned is made or suggested in connection with the execution, delivery, and effect of the writing. It is a solemn written contract containing all the essentials to make it valid in every respect. Its integrity as a binding contract is unquestioned. Appellants, however, here seek by the means shown in this record to destroy or avoid its binding effect by an alleged agreement, wholly in parol, or to be relieved of its obligations on the contention made that it has been discharged or satisfied by and through an oral agreement that is contrary to its plain terms.

Article 3995, in subdivision 4, R.S.1925, provides: "No action shall be brought in any court in any of the following cases, unless the promise or agreement up-

on which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized * * * upon any contract for the sale of real estate or the lease thereof for a longer term than one year."

It is affirmatively shown, both by the pleadings and evidence of appellants in this case, that they have placed themselves in direct conflict with the statute. As a part of the agreement which they contend was orally .made between the parties in 1931, appellee agreed that they could use the north one-half of the tract of land for a period of two years from that date free of rental, and that appellants agreed to convey such tract of land to appellee under the stated conditions.

Furthermore, appellants say that appellee agreed, at that time, to rescind, change, modify, or cancel the admittedly valid written agreement then in effect and relating to and controlling the title to the land in question. All such agreements, as thus and then made, were all in parol, and in direct violation of the statute, and the findings of the jury that such alleged parol agreements had been made, are of no binding effect. The trial court should have peremptorily instructed the jury in favor of appellee.

The effect of the series of alleged parol agreements, as contended by appellants, is not simply to release a vendor's lien against a portion of the land covered by the lien; appellants are here undertaking to strike down the written instrument which controls the title to the whole tract of land; provides for a lease of a part of the land for two years; and provides for an outright conveyance of one-half of the land, and all by an alleged agreement, wholly in parol, made three years before this suit was instituted. As we understand the authorities, such contention cannot be sustained on any theory. Dial v. Crain, 10 Tex. 444; Foster v. Ross, 33 Tex.Civ.App. 615, 77 S.W. 990; Newson v. Minton (Tex.Civ.App.) 250 S.W. 768; Groce v. Yates Mach. Co. (Tex.Com.App.) 288 S.W. 161; Fleming v. Todd (Tex.Civ. App.) 42 S.W.(2d) 123; Gardner v. Platt (Tex.Civ.App.) 68 S.W.(2d) 297; Sprague v. Haines, 68 Tex. 215, 4 S.W. 371.

The appellants, being clearly within the provisions of the statute of frauds, they cannot avoid the judgment against them herein, unless through complete and def-inite pleadings, supported by proper proof, they can bring themselves within some exception thereto. The record fails to show any pleading or proof on the part of appellants, which entitles them to the benefit of any rule of equity, which might have the effect of relieving them under certain circumstances and conditions.

The true purpose of our so-called statute of frauds, and the decisions of our courts relating thereto, is to safeguard the integrity of written instruments and contracts as made between the parties thereto and those who may be affected thereby. It would be disastrous to all, particularly to both the debtors and creditors immediately involved, if for light or transient reasons or because of bad trades or changing economic conditions, written contracts could be set aside or nullified.

It is our opinion that the trial court entered the proper judgment in this cause, and his action is therefore in all things affirmed.