### BOLING v. DALLAS RY. & TERMINAL CO.

#### No. 14569.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 29, 1943.

Rehearing Denied Nov. 26, 1943.

Allen & Allen, of Dallas, for appellant.

Burford, Ryburn, Hincks & Charlton and W. M. Taylor, Jr., all of Dallas, for appellee.

SPEER, Justice.

Plaintiff W. P. Boling sued defendant Dallas Railway & Terminal Company, a private corporation operating street cars in the City of Dallas, for damages sustained from a crushed foot, growing out of a collision between defendant's street car and plaintiff's automobile.

Parties here will bear the same designation as they bore in the trial court.

No point is made of the sufficiency of the pleadings of either party. Plaintiff appears to have attempted to drive his automobile across McKinney Avenue from a point near where Leonard Street intersects McKinney on the south side to the nearby intersection of Maple Avenue with the north side of McKinney. McKinney Avenue runs east and west and in the course taken by plaintiff he was traveling slightly northwest across McKinney. Defendant maintains double street car tracks on McKinney. While crossing this avenue in the direction mentioned, one of defendant's westbound street cars struck, rather lightly, the metal guard on the right-hand end of the rear bumper on plaintiff's automobile, and both the street car and automobile stopped promptly, causing little or no damage to the automobile or to plaintiff. The contact caused the bumper guard to become entangled with some part of the street car near the center of its front end. The motorman on the street car and plaintiff alighted and inspected the entanglement. They both concluded that if plaintiff would in some way push his bumper downward and the street car backed a few inches, the vehicles might be released. Plaintiff jumped up and down on the bumper while the motorman, operating from the front end of the street car, reversed his car and moved back from 3 to 6 inches, but the automobile was not released by this means.

At about the time they were thus trying to disentangle the vehicles, an eastbound street car approached on the other track on McKinney Avenue, and stopped 20 or 30 feet from the front of the westbound street car.

The motorman on the eastbound street car alighted and came up to the scene. Plaintiff's automobile was at that time standing at an angle of about 45 degrees from the front of the westbound car, with its front wheels perhaps near the north rail on which the westbound car stood, the right-hand end of the rear bumper of the automobile fastened to the street car and the left rear end about even with the south side of the car to which it was attached. Plaintiff told the eastbound motorman there was sufficient room for him to pass and, believing this, the motorman boarded his eastbound car and moved slowly, safely passing the automobile with the front end of his car and proceeded two-thirds the length of the westbound car, at which point he stopped upon hearing some one "holler". It was at this juncture plaintiff was injured, and the point before us must be determined by what then and there transpired.

Plaintiff contends that the motorman on the westbound car was negligent, proximately causing his injuries, in leaving the front end of his street car, where he could see plaintiff and the entangled automobile, and going to the rear end of his car, and without attempting to observe plaintiff and his automobile, reversed the westbound street car, and started east in the same direction the other street car was traveling, thus pulling the automobile backward by its right-hand rear corner, forcing the automobile to swing around toward the passing street car, where the front end of the automobile came in contact with the eastbound street car, jamming the rear

end of the automobile into the front end of the westbound street car, at a time when plaintiff was between the rear end of his automobile and said street car, resulting in the injuries sustained.

Defendant contends that at the time the motorman on the westbound car left the front end of his car to go to the rear and propel it backward, traffic on the avenue was heavy and the motorman was necessarily required to go to the rear to properly observe traffic in the rear when he moved in that direction. That at the time the motorman left the front of his car, plaintiff was out between the two sets of tracks and in no danger of being caught between his automobile and the westbound car which the motorman expected to move backward. That if plaintiff thereafter moved into the space between the automobile and the street car and received an injury, it was occasioned by his own contributory negligence in thus placing himself in the place of danger.

A jury was empaneled to try the case. At the conclusion of introduction of plaintiff's testimony, defendant moved the court to instruct the jury to return a verdict in its favor. Grounds for the motion consisted of claims that no negligence of defendant had been shown. The summary instruction was given and judgment entered in favor of defendant and against plaintiff. From that judgment plaintiff has appealed, upon the point of error that the court should not have given the instructed verdict but should have submitted the case to the jury on proper special issues.

It has long been the law in this state that if a party introduces sufficient evidence to support a verdict in his favor, he is entitled to have the question submitted to a jury if one is demanded. Eastham v. Hunter, 98 Tex. 560, 86 S.W. 323. In determining whether or not an instructed verdict should have been given, the appellate court must consider all the testimony offered, in its most favorable aspect for the losing party, disregarding conflicts and contradictions. Harpold v. Moss, 101 Tex. 540, 109 S.W. 928; Stevens v. Karr, 119 Tex. 479, 33 S.W.2d 725. In reviewing a complaint that an instructed verdict was had, appellate court will consider all evidence in its most favorable light to the one against whom the verdict was instructed, and every legitimate presumption will be indulged in his favor.

McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442; Texas & N. O. R. Co. v. Brannen, 140 Tex. 52, 166 S.W.2d 112.

It will be observed that no harm came to plaintiff, when the westbound street car contacted and became entangled with his automobile; nor at the time plaintiff jumped up and down on his rear bumper and agreed with the motorman of said street car that if the car was backed a few inches it might come loose; the street car was backed three to six inches by the motorman, standing on its front end while looking at plaintiff, and nothing happened. At this juncture the eastbound car approached and stopped. Plaintiff motioned it through, believing it had sufficient clearance. It would have passed safely had the westbound car stood still, leaving the automobile in its then position. Plaintiff testified the last time he saw the motorman on the westbound car was when the motorman backed the car a few inches. He said he was at the rear of his automobile and at the front of the street car when he motioned the eastbound car through; he was not definite as to his exact position while the eastbound car was passing; he said he did not think he moved out of the little intervening space between the rear of his automobile and the street car; he referred to that space as like a "V". He further testified that while the eastbound car was passing, the motorman on the westbound car put his car in motion backward, without warning or signal that he was going to do so; that he did not know the motorman intended to do this; that reversing the westbound car dragged his automobile backward and tended to throw it around toward the passing car, closing the space where he was standing between the rear of his automobile and the street car to which it was fastened; that when this occurred, the left-hand front of his automobile came in contact with the eastbound car, pressing the automobile back against the front of the westbound car and caught his foot, crushing it. Mr. Hastings, a nearby filling station operator, testified that he heard the impact and within a very short time went to where the car and automobile were entangled; he, too, told of the approaching eastbound street car, that it stopped and "they" talked about whether he could pass; that plaintiff said the car had clearance and told the motorman to go through; the plaintiff was

jumping up and down on his bumper trying to release it; that when the eastbound car started to pass, the motorman on the westbound car (the one to which the automobile was attached) went to the back end of his car and started backing; "that is when the automobile swung around and mashed plaintiff's foot"; the westbound car moved backward a short distance, two or three feet, just enough to pull the automobile around to come in contact with the passing eastbound car.

Plaintiff introduced parts of the deposition of Mr. Dalton, the motorman of the westbound street car. Witness said that when his car came in contact with the automobile he stopped and got out on the ground, and he and plaintiff found the bumper guard hung in the front end of the street car, about three feet from the left front corner of the car; that he backed the street car a few inches, thinking that it would release, but it did not; he saw the eastbound street car approach and stop, blocking Maple Avenue. He said plaintiff was standing between the two tracks and out of danger, and he then went to the rear of his car and started it backward; that he could have reversed his car from the front, but traffic was heavy and that his duty was to look in front of him when he moved the car, and for that reason he went to the rear to reverse it; he did not look back toward where the car and automobile were entangled to see where plaintiff was, but fixed his keys at the rear and moved the street car backward. He heard somebody "holler"; he was told the automobile had caught on the other street car. The motorman said he gave no sign that he was going to move the street car backward, nor did he know where plaintiff was at that time; that the last time he saw plaintiff he was standing between the two tracks as the witness took his key out of the front end and started to the rear. The motorman also testified that at the time he moved the car backward, he did not know that the eastbound car had approached and was going east.

■ We have concluded that considering the testimony in its most favorable light to plaintiff, it was sufficient to raise an issue of negligence by the motorman in the manner in which he moved his car, taken in connection with the knowledge he admittedly had of the whole situation. Under the rule laid down in the above-cited cases, in these circumstances it was improper for the trial court to take the case from the jury and instruct a verdict for the defendant. Points complaining of that act are sustained, requiring a reversal of the case.

We have only attempted to point out some of the matters in evidence favorable to plaintiff, since in the view we take of the case it must be remanded for another trial, and we will not comment further on the testimony. Nothing we have said about the testimony should be considered as significant of anything more than that it is sufficient to raise a jury question.

There are apparent contradictions in the testimony, some of which might be construed against plaintiff, but under the rules above announced in determining if an instructed verdict should have been given, conflicts and contradictions are disregarded—this for the reason they only raise jury questions.

Defendant contends in its brief that since it was undisputed that plaintiff either told the motorman to back his car or assented to it when suggested by the motorman, plaintiff could not base negligence upon the act of backing the street car; citing Levlon v. Dallas Ry. & Terminal Co., Tex.Civ.App., 117 S.W.2d 876, writ refused. We think that case not applicable here because, in the instant case, at the time plaintiff consented to the moving backward of the street car, the motorman was on the front end where he could observe everything, and when tried it failed. Whereupon the backward movement which plaintiff contends caused his injury was at a subsequent time, when plaintiff did not know about it, and the motorman had removed himself from the front of the car and admitted that he did not know what was being done there by plaintiff, nor what position plaintiff occupied relative to the entangled vehicles.

For the reasons stated, the judgment of the trial court must be reversed and the cause remanded for another trial, on the facts as shall then be presented.

Reversed and remanded.

### On Motion for Rehearing.

In appellee's motion for rehearing, our attention has been called to an expression used in the opinion, in which we stated that the motorman testified "that he backed the street car a few inches thinking that it would release, but it did not". Upon

re-examination of the record, we find we were in error as to this part of his testimony. He did not testify in his deposition on the matter of his first attempt to back the car, if that was done, as testified to by appellant (plaintiff). The appellant did testify as to the first effort when the car was backed from three to six inches. This being an instructed verdict, we announced the rule concerning the effect of all testimony favorable to the losing party, and our statement should have been confined to the testimony by plaintiff as indicated in the opinion. As pointed out above, the motorman did not testify about the first backward movement of the street car. We think the statement attributed to the motorman would not change the result of our conclusions expressed, but in fairness to appellee and the record, we are glad to give appellee the benefit of the correction.

With this statement we overrule the motion.