**SAFEWAY STORES, INC., Appellant,**

v.

**William Ed WHITE, Appellee.**

**No. 16179.**

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 16, 1960.

Rehearing Denied Jan. 13, 1961.

Thompson, Knight, Wright & Simmons, Pinkney Grissom, Timothy E. Kelley, and David S. Kidder, Dallas, for appellant.

Carter, Gallagher, Jones & Magee, Joe Hill Jones and Ben T. Warder, Jr., Dallas, for appellee.

RENFRO, Justice.

Plaintiff White recovered judgment against defendant Safeway Stores, Inc., for personal injuries received when pinned between a truck and the wall of a building.

The case was submitted to the jury on the doctrine of discovered peril. The jury found that (1) just before the accident White occupied a position of peril; (2) a Safeway employee, Clark, "discovered and realized before the event in question" that White was in peril; (3) Clark realized or should have realized White would not extricate himself; (4) such realization was in time so that Clark in the exercise of ordinary care could have avoided the event; (5) Clark failed to use ordinary care in the use of all means at hand; and (6) such failure was a proximate cause of the event.

The defendant urges on appeal that issues 2 through 6 have no support in the record, and that the findings of the jury in answer to said issues are against the great weight and preponderance of the evidence.

■ In considering the question of no evidence we must disregard all evidence adverse to the findings of the jury and consider only the evidence favorable to such findings, including every legitimate conclusion which tends to uphold the same; however, in determining whether the answers of the jury are contrary to the overwhelming weight and preponderance of the evidence, we must consider all the evidence, including that which is contrary to the verdict. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660; Fisher Construction Company v. Riggs, Sup., 325 S.W.2d 126.

The accident happened at a doorway in the south wall of a Safeway building in Corsicana. The area south of the store was used as a parking lot as well as for loading and unloading at the aforesaid door.

The witness Sanford, driver of a Safeway truck, testified he was driving a trailer-truck 8 feet wide and 33 to 35 feet long. With his cab pointing slightly to the east, he backed his truck toward the door. About 8 feet from the door he stopped his truck, went around to the rear, broke the seals on the doors of the truck and opened the doors. He then went back to the cab, put the truck in reverse and just gradually moved back very slowly. His purpose was to back his truck to a point where it would contact with the bump post on either side of the door. While backing he "heard the fellows hollering" in the receiving room and figured he had backed far enough; he figured he was close enough to the door. The people in the store do not guide him in backing to the door but on this day he did hear them say stop. He stepped out of the cab and halfway to the door he could tell from the tone of voices there was something wrong. He then got back in the cab and pulled forward 3 or 4 feet. He then learned that plaintiff had been caught between the truck and the building. He had not seen plaintiff that morning.

Plaintiff testified he was a salesman for Housewares Distributors and drove a panel truck. On the day in question he drove down the alley (which apparently is a part of the parking lot heretofore mentioned) to the back of the store. As he drove down the alley he saw Mr. Clark, Grocery Department Manager, at the south door. He proceeded on down the alley and parked his truck. On prior occasions he used the back door in his dealings with Safeway but seeing Clark at the south door he proceeded to approach him on foot. He was walking as he approached Mr. Clark. The truck in question was next to the bump post or about a foot away from the bump post, standing still. He walked up to the edge of the truck and stopped, propped himself against the truck and talked to Mr. Clark a few minutes. Clark was standing in the doorway 3 or 4 feet away. He said to Clark, "You've got two trucks today, I don't guess I'll have a chance to get in", and "he said he doubted it and I'd better check with Chappell * * * the man-

ager." Plaintiff stood there a few minutes. Clark turned around to go in; "the truck had been setting there all that time, so I started on in the door." As he walked between the truck and the wall the truck "lurched back on me and pinned me" between the brick wall and the truck. As he came toward the back of the store the truck was plainly visible and he had no difficulty whatever in seeing it and it was stopped at the time and was stopped at the very same position where it was stopped as he stood and talked to Mr. Clark. That from the first time he saw the truck until the sudden lurch it "was stopped and remained stopped". While the truck was still stopped Clark turned and went into the building. He did not tell Clark he was going to follow him in the door. The truck traveled "just a very fraction" before coming in contact with him. While standing at the side of the truck he told Clark "If I can't get in, I might just as well go ahead and work Brookshire's this morning." He did not see anyone make any effort to direct Sanford in the backing of the truck.

Mr. Clark, Grocery Department Manager for Safeway, testified: He saw plaintiff drive up the alleyway on the west side of the store's parking lot. At the time, the Safeway truck was backed up near the door in question, probably 10 or 12 feet away. He saw plaintiff get out of his truck and come across the lot. Sanford continued to back up uninterruptedly until the time plaintiff got hurt, he just backed up slowly and continuously. The witness was standing near the door, he observed plaintiff coming toward the door. The truck was still in motion backing slowly; plaintiff was "in a little run", looking straight at Clark and did not slow his gait while looking at Clark. Plaintiff hollered and told witness he was going to Brookshire's and that he would be back, he did this while coming across the parking lot. It is approximately 15 or 20 feet from the doorway in question to the corner of the building from which plaintiff approached. Clark never said "watch out for the truck" or "stop". Clark

turned around to lay papers down on a bill of lading (apparently inside the building) and when he turned around again plaintiff was pinned. The last time he saw plaintiff, plaintiff was approximately 6 or 8 feet away, running, and the truck was still backing. Clark yelled and the truck stopped; but later he said the truck had already stopped when he yelled. On occasions plaintiff would check with Clark when there on business in the store. Clark had no idea that plaintiff was coming on through the door. He did not realize that plaintiff was in any sort of danger when he, Clark, turned back to the doorway.

Although other witnesses testified, none of their testimony has any bearing on the issues before the court.

■ It has been held by the Supreme Court in Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561; that the quantum of proof required of the plaintiff on elements of discovered peril in order to entitle him to have them submitted to the jury was such facts and circumstances as taken together with all reasonable inferences therefrom constituted some evidence of probative force of their existence. White v. White, 141 Tex. 328, 172 S.W.2d 295; Stevens v. Karr, 119 Tex. 479, 33 S.W.2d 725; Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256.

■ It is within the province of the jury to resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses. Texas Law of Evidence by McCormick and Ray, p. 5, sec. 3; Austin Fire Ins. Co. v. Adams-Childers Co., Tex.Com.App., 246 S.W. 365; Gulf, C. & S. F. Ry. Co. v. Higginbotham, Tex.Civ.App., 173 S.W. 482.

It is obvious that there is nothing in the testimony of Sanford, or the plaintiff himself, to support the issues of discovered peril.

Looking solely to the testimony of Clark, however, and disregarding all adverse testimony and inconsistencies in Clark's tes-

timony, there is some evidence of probative force to uphold the findings of the jury. For instance, Clark's testimony that the plaintiff kept running toward him and the truck kept backing and that he did not yell at plaintiff to stop is some evidence from which an inference might be drawn that Clark saw, knew and realized that plaintiff would continue on his course to the door. Hence, we overrule the points of error based on no evidence.

We are confronted, however, with defendant's points of error contending that the verdict is against the great weight and preponderance of the evidence. In considering said points, we must consider all the evidence.

■ In this connection it is to be remembered that plaintiff's testimony not only failed to offer any support to the jury's answers but was contrary to the findings of the jury. If the accident happened as plaintiff said it did and as we have summarized his evidence above, then the situation could not have been one of discovered peril as that doctrine has been treated by the Supreme Court. For instance, in R. T. Herrin Petroleum Transport Co. v. Proctor, Sup., 338 S.W.2d 422, 429, the Court said: "In order to charge one with liability under the doctrine of discovered peril, there must exist a clear chance to avoid injury which could have been reasonably perceived by the party sought to be held," citing Terry v. English, 130 Tex. 632, 112 S.W.2d 446; Schuhmacher Co. v. Posey, 147 Tex. 392, 215 S.W.2d 880; Morreale v. Cohen, 158 Tex. 291, 310 S.W.2d 737; Welch v. Ada Oil Co., Tex.Civ.App., 302 S.W.2d 175, wr. ref., n. r. e.

■ Taking into consideration the fact that when plaintiff was "trotting" toward Clark he was also "trotting" toward the truck, which he admitted he had in view at all times, it is hard to perceive how Clark should have been any more aware of danger than plaintiff was himself. We fail to see how there existed a clear chance by Clark to avoid injury which was just as

open and obvious to plaintiff as to Clark, and under the preponderance of the evidence Clark had no realization that plaintiff would continue to the doorway. The circumstances on the occasion and their past dealings were not such as to lead an ordinarily prudent man to the conclusion that plaintiff would so continue his course. Clark himself, according to his evidence, did not perceive any danger, and turned his back in order to pursue his regular work. It is undisputed that Sanford never received assistance from Clark or other employees in placing his truck in position.

The burden of proof was on the plaintiff to produce evidence to charge the defendant with liability under the doctrine of discovered peril. Although he so convinced the jury, we must hold that in view of all the evidence in the record the jury's findings were so against the great weight and preponderance of the evidence as to be clearly unjust.

We are reluctant to set aside a jury verdict, but, as said in In re King's Estate, supra [150 Tex. 662, 244 S.W.2d 662], " * * * Article 5, sec. 6 of the Constitution, Vernon's Ann.St., is no more to be ignored than any other part of that document, and that provision, with the decisions, statutes and rules based upon it, requires the Court of Civil Appeals, upon proper assignment, to consider the fact question of weight and preponderance of all the evidence and to order or deny a new trial accordingly as to the verdict may thus appear to it clearly unjust or otherwise."

It is our considered opinion that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, and therefore reverse and remand the case for a new trial.

The defendant also has points of error contending the judgment should not have been rendered against it because the record shows no evidence that Clark owed plaintiff any duty under the discovered peril doctrine or that he had any control over

the operation of the instrumentality inflicting the injury.

The defendant relies largely on language used by the Supreme Court in Elder v. Panhandle Stages Shuttle Service, 144 Tex. 638, 193 S.W.2d 170. In our opinion the factual situation is so different in the instant case that the holding in the above case is not applicable. In view of the record as a whole, we overrule the points of error.

The judgment of the trial court is reversed and the case remanded for a new trial.