**HUMBLE OIL & REFINING COMPANY,**
Appellant,

v.

**J. W. PATTON et al., Appellees.**

No. 7266.

Court of Civil Appeals of Texas.

Texarkana.

Jan. 17, 1961.

Rehearing Denied Feb. 7, 1961.

J. W. Chandler, Jacksonville, Frank L. Heard, Jr., Houston, for appellant.

Wm. Emerson Stone, Jr., Jacksonville, Steve Miller, Tyler, Vinson, Elkins, Weems & Searls, Houston, Norman, Rounsaville & Hassell, Jacksonville, for appellees.

CHADICK, Chief Justice.

The opinion in this case dated and filed November 15, 1960 is withdrawn and the following substituted for it. This was a trespass to try title action in the trial court. The issue with which this appeal is concerned is the south boundary of a leasehold estate in one of the tracts of land involved. The judgment of the trial court is affirmed.

In broad outline, the appellees' pleadings encompass all issues determinable in a trespass to try title suit in which the five, ten and twenty-five year statutes of limitation are plead. The appellant Humble Oil and Refining Company's pleadings consisted of a plea of "not guilty" and a cross action in statutory trespass to try title form. The court entered judgment upon the jury's determination of Special Issues awarding the appellees title and possession of a 7.93-acre tract, and denied recovery to Humble upon its cross action. Of the

numerous defendants in the trial court only Humble has appealed and one point of error is briefed.

For explanatory purposes a simplified plat of the Smither Survey of Cherokee County is sketched:

This plat shows the position of Humble's Ione Davis Frankin lease with reference to Gulf Refining Company's J. E. Patton lease. The calls do not close in the description of the Franklin tract contained in the mineral lease instrument under which Humble claims. Patton and the other appellees aligned with him, as plaintiffs in the trial court, contended and the court decreed that line 1–2–3, the general course of an old public road, is the south boundary of the Franklin tract and Humble's leasehold estate therein. Humble contended in the trial court, and now asserts the records show as a matter of law, that line 3–4–5 is the south boundary of its Frankin leasehold. The crosshatched area is the 7.93-acre tract awarded the appellees free and clear of Humble's mineral lease. The trial court submitted issues to the jury presenting Humble's defenses and theory of recovery on which the jury made adverse findings. If, however, the line 3–4–5 is established as a matter of law, the jury's findings are of no consequence as Humble, timely and in appropriate form, moved for a directed verdict and for judgment notwithstanding the verdict.

■ The question for review by this court is whether or not the evidence in the record establishes as a matter of law that Gulf, not a party to the suit, and Humble made and executed a leasehold division line agreement between their respective Patton and Franklin leases. In this connection Gulf Oil Corporation v. Marathon Oil Co., 1941, 137 Tex. 59, 152 S.W.2d 711 is authority for the rule that parties may make parol agreements evidenced by their acts and conduct, as well as by express statement, fixing division lines between their lands when:

1) Uncertainty, doubt or dispute exists as to the location of the true division line (actual dispute between the parties is not necessary if uncertainty and doubt exists

occasioned either by mistake of law or fact) ; and

" 2) The agreement is executed by erection of physical monuments or otherwise marking the agreed line and actual possession or use to the line of agreement or improvement or development of the land with reference to the line follows. (Acquiescence or estoppel are not necessary to validate the agreement).

The evidence must be examined in the light of this rule to determine if as a matter of law, (1) an agreement was made between Gulf and Humble fixing a division line between their respective Patton and Franklin leases, and if such an agreement appears; (2) whether the agreement was carried into execution by the parties; and (3) if there existed at the time of agreement uncertainty, doubt or dispute among the parties respecting the location of the line.

■ For Humble to prevail, the facts proved and all logical inferences and deductions therefrom must be so harmonious and consistent that reasonable minds would not differ in reaching the conclusion Humble urges. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696, and Stevens v. Karr, 119 Tex. 479, 33 S.W.2d 725, opinion adopted, both directed verdict cases; Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, a motion for judgment notwithstanding the verdict case. See also Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511, Syllabus 8, w/r for statement of test for discovery of fact issues.

As previously mentioned the boundary agreement may be proven by express statement of the parties or by their acts and conduct. The evidence and exhibits in the trial court make up several volumes running just under 2,000 pages. Patently, mention of all the facts bearing upon the issue cannot be made, and the effort here will be to give a general outline of some of the more important facts and notice the inferences and deductions therefrom.

Gulf initiated mineral development on its Patton lease July 16, 1954, by filing an application with the Railroad Commission for a permit to drill its J. E. Patton No. 1 well. The following September 15, October 5, and November 3 it filed similar applications for wells Nos. 2, 3, 4 and 5. In each of the applications for drilling permit Gulf represented to the Railroad Commission that the division line between the Franklin and Patton tract was substantially that shown by plat line 3–4–5. The first four of these wells were drilled before November 2, 1954. Sometime prior to filing the first of these applications Gulf made an unsuccessful effort to secure a division line agreement from Humble's lessor establishing the road, which is line 1–2–3 on the plat, as a division line between the Patton and Franklin land.

Humble during the same year on September 23 in an application for permit to drill on its Neches Unit No. 10, which contained a substantial part of the Franklin lease, and in applications to drill Brisby Estate wells 1 and 2 filed October 18, represented to the Railroad Commission that the south boundary line of its Franklin lease was substantially plat line 1–2–3.

Employees in Humble Land Department a short time before November 2 or 3, 1954, became aware of the applications filed by Gulf, and the division lines shown on Gulf's plats. An Humble employee made an immediate inquiry at Gulf's Tyler office for the purpose of discussing the division line between the two companies' leases, and was advised to take the question to officials in Gulf's Houston office. Thereafter, on either November 2 or 3, 1954, an Humble attorney, perhaps accompanied by others, called at Gulf's Houston office and entered into a discussion with Gulf officials for the purpose of reaching an understanding on the division line. This attorney as a witness stated that the Gulf representative recognized the uncertainty of the location of the division line, and that doubt and dispute existed as to its true location. He stated further that the Gulf representative

indicated to him that Gulf was satisfied with the line as located on its proration plats, and would probably continue to develop the Patton tract with reference to the line at that location. He testified that at the end of negotiations he had the very definite impression that Gulf had decided to conduct their operations on the line 3–4–5 in the development of their lease.

Another of Humble's lawyers testified that he participated in conferences with Gulf's representatives in an effort to reach agreement on the boundary, and was present at a conference at which the boundary was fixed at line 3–4–5 of the sketched plat, and in a later conversation with Gulf officials he told them that Humble was operating on the basis of the line 3–4–5 which was agreed upon in the Houston conference.

After the Houston conference Humble amended its Neches Unit No. 10 and its Brisby Estate applications, and changed them to show the Franklin lease south boundary as line 3–4–5. An employee of Humble's Land Department in the course of his testimony stated Humble initially used the line 1–2–3 in its Neches Unit No. 10 out of caution, for the reason that if it should later be found the true boundary was further south the application line could be changed without penalizing production from the 40-acre unit. He explained that if the more southerly line 3–4–5 had been used in the application and Humble thereafter was compelled to use line 1–2–3 a deficit in acreage in the unit would be created and production penalized. Production-wise it was easier to handle excess than deficit acreage in the development unit.

Suit was brought August 3, 1955 between substantially these same parties, in which Gulf intervened, but a nonsuit was taken before judgment. Following the nonsuit but prior to institution of the instant suit Gulf executed a release to the lessors in its Patton lease of all interest conveyed to Gulf by such lease in the 7.93-acre tract.

Gulf has not intervened or otherwise become a party to this last suit. In testimony concerning Gulf's release it was developed that the appellees were under a moral obligation to share any recovery awarded them with Gulf.

Not to be overlooked is testimony by surveyors and others regarding previous surveys, landmarks, and monuments offered for the purpose of establishing the true boundary of the Franklin tract along with evidence of occupation, use, etc.

These facts and the reasonable inferences and deductions therefrom will be analyzed to determine whether or not they are so harmonious and consistent that reasonable minds must necessarily conclude that a division line agreement was reached between Gulf and Humble. No effort will be made to follow all of the reasonable inferences which arise from these facts as they may coincide, clash, unite, support or rebut a conclusion.

■ Strong inferences that an agreement on a boundary was reached at the Houston conference arise from the action thereafter of both Gulf and Humble in filing proration plats using line 3–4–5 as a boundary and Humble's action closely following the conference of amending existing plats to conform to such line. On the other hand, contrary inferences and deductions equally reasonable and equally strong and consistent with a conclusion that no agreement was reached arise and may be made from the facts that Gulf used the 3–4–5 line in its applications prior to as well as after the claimed boundary agreement, at times when it was known to Gulf that uncertainty, doubt, and dispute existed relative to the Franklin tract's true south boundary.

Gulf's action in continuing to use the same line after the Houston conference that it used before as reasonably and consistently comports with and supports a conclusion that it made no boundary agreement with Humble, as a conclusion that it

did make an agreement. Gulf's action may have been dictated by caution and an effort to avoid boundary or acreage changes in production units once established. Humble admittedly used the more northerly 1–2–3 boundary line in its initial application on the Neches Unit No. 10 and the Brisby estate applications to avoid the possibility of later changes. Humble testified its use of such line by explaining that it was done to avoid the production penalty that might occur if there was a title failure to the disputed acreage and thereby an acreage deficit created within a unit. Gulf well might have been influenced by reasons similar to those Humble offers to justify its action. Perhaps Humble's caution to avoid an acreage deficit was more compelling[1], nevertheless disruption and confusion incident to a change would be a matter of grave concern to Gulf as a prudent operator, and a condition to be avoided when reasonably possible. Using the 3–4–5 boundary avoided interference with a producing unit which title litigation would inject.

Other inferences and deductions supporting this construction of the evidence may be found in the fact that Gulf had participated in a prior lawsuit and had released its claim of title to the land in dispute with an informal understanding that it would share in a recovery if such should be had by its lessors. From the surveying and other evidence reasonable minds could very well conclude that at the time of the Houston conference Gulf had strong reason to believe that the line 1–2–3 was the true Franklin boundary and to conclude that Gulf acting in its own best interest and with knowledge of a fact not heretofore mentioned, that a suit was contemplated by its lessors to recover or quiet title to the 7.95 acres, would not find it desirable to agree upon a more southerly boundary, possibly depriving itself of valuable producing acreage.

The inferences and deductions from all of the evidence are many, but their collisive play upon each other is not necessary to be followed in detail as the foregoing illustrates that there is not that harmony

---

1. The following is an excerpt from the argument advanced in Humble's motion for rehearing:

"(a) Humble's Neches Oil Unit #10 was formed by 'pooling' or 'unitizing' four or five separate tracts, each having different ownerships and therefore different royalty owners. These units, being creatures of contract between lessors and lessee, can be only reformed by contract; after surrounding units are formed, the impossibility of going back and reforming the units with their diverse ownership is apparent, for a change at such time changes the percentage of production each gets from a particular well.

\*      \*      \*      \*      \*

"On the other hand Gulf's lease was on one large tract, the ownership of which was the same throughout. It therefore had no separate 'pooled' or 'unitized' tracts joined to form units. The term 'unit' as applied to the Gulf-Patton tract refers only to 'proration units' as distinguished from 'pooled units'.

\*      \*      \*      \*      \*

"The evidence therefore is clear that the reason for Gulf's repeated declarations in its proration plats after December 2, 1954, that its northerly lease line was in the 3, 4, 5 position could not have been the same as Humble's reason for initially using the line 1, 2, 3, as its Neches Oil Unit 10 line (i. e., to avoid the cut in allowable which would be assigned to an undersigned proration unit in the event of a title loss of the disputed acreage); as Gulf's lease was under one ownership, it would have formed its proration units with the 1, 2, 3, line as its northern lease boundary had it then thought this was its lease boundary, and in the event its title had subsequently failed, it could have reformed its proration units by simply filing amended plats, redividing the productive acreage of its lease into different shaped 40-acre units around the same wells, just as it had done many times previously. Under the said Railroad Commission rules, Gulf well knew that the allowable on its wells would not be cut if this action were taken, and the interest of no royalty owner, mineral or leasehold owner in the production from any Gulf well would have been changed in the slightest by such action."

and fusion of facts, reasonable inferences and deductions which would lead reasonable minds to the one conclusion that a boundary agreement was made by Gulf and Humble.

In the main, Humble relies upon Gulf Oil Corporation v. Marathon Oil Co., supra, a case having a resemblance to this but substantially different in that the uncontroverted evidence shown by the record in it was that the companies owning the adjoining leaseholds expressly agreed upon a division line. The opinion states at page 721 of 152 S.W.2d that the decision therein is based upon the conclusion that a ratification and adoption of the express agreement was made by the two companies. Here there is the controlling difference that the evidence cannot be said to be undisputed that the division line was agreed upon.

Having reached the conclusions stated, the court must overrule Humble's single point of error and affirm the judgment of the trial court. The motion for rehearing is overruled.

It is so ordered.

