Jane L. JOHNSON et al., Appellants,

v.

Robert A. ALLEN, Appellee.

No. 3204.

Court of Civil Appeals of Texas.

Eastland.

Nov. 18, 1955.

Rehearing Denied Jan. 6, 1956.

Hawkins & Dean, Breckenridge, for appellants.

Park & Hemphill, Snyder, for appellee.

GRISSOM, Chief Justice.

Robert A. Allen sued Dr. Jane L. Johnson and J. W. Layton for the purpose of specifically enforcing performance of a contract for the sale and exchange of land. Judgment was rendered for the plaintiff and defendants have appealed. For convenience, the parties will usually be referred to by their surnames.

In a written contract between Johnson and Allen, executed January 6, 1951, Johnson agreed. to sell and convey to Allen 118.79 acres of land described therein. The consideration was stated as follows:

"The purchase price is $10,050.00, which is payable as follows: $5,550.00 cash on the delivery and execution of deed, and in addition, the further consideration of the Purchaser conveying to the Seller the following described tract * * *."

There followed a description of 4.84 acres. The contract then continued:

"Seller agrees to furnish up to date abstract to Purchaser on the 118.79 acre tract described above; and Purchaser agrees to furnish up to date abstract on the 4.84 acre tract described above. This contract of sale is subject to both tracts of land described above being vested in the present owners, the parties to this contract, and subject to both parties being able to convey merchantable title, free and clear of any and all encumbrances except those named herein. Each party to furnish abstracts to the other within a reasonable time and each party will have ten days after delivery of abstracts to examine them and to point out title objections, if any; and then both seller and the purchaser shall have a reasonable time to cure any title objections pointed out.

"All of the ad valorem taxes for 1950 are to be paid by the respective parties now owning said tracts.

"This agreement is conditioned further and contingent upon the Purchaser's receiving an approved loan of $4,000.00 on the 118.79 acre tract described above.

"When the Seller gives possession of the 118.79 acre tract herein, the purchaser will give possession of the 4.84 acre tract."

The contract provided that when title objections, if any, had been met, Johnson would deliver a warranty deed to the 118.79 acres to Allen and Allen would deliver to Johnson a warranty deed to the 4.84 acres.

The jury found that (1) Allen tendered a complete abstract on the 4.84-acre tract to Johnson within a reasonable time after January 6, 1951; that (2) Johnson did not tender a complete abstract to the 118.79-acre tract within a reasonable time after January 6th; that (3) Allen tendered a deed "as specified in the contract" on the 4.84-acre tract to Johnson within a reasonable time after January 6th; that (4) Allen was "ready, willing and able to perform the payment of the cash consideration, as specified in said contract"; that (5) Allen "obtained an approval of a $4,000.00 loan on the 118.79 acre farm, as set out in said contract, within a reasonable time after January 6th;" that (6) Johnson did not tender a deed, "as per the contract, to the 118.79 acre tract" to Allen within a reasonable time after January 6th; that (7) Allen "at the present time is ready, willing and able to perform said contract of January 6th"; that (11) Allen did not fail to furnish Johnson a complete abstract of title for examination within a reasonable time after January 6th; that (12) Allen did not refuse to close the trade unless he was given the rent from both tracts for 1951; that (13) Allen did not refuse to close the deal for the 118.79 acres unless he was given possession thereof.

On March 8, 1951, Allen and wife executed a warranty deed to the 4.84 acres to Johnson. On February 9, 1951, Johnson executed a deed to the 118.79 acres to her brother, J. W. Layton. This deed was executed, according to Dr. Johnson, for the purpose of securing Layton for money paid by him to discharge Johnson's debt.

Appellants' first point is that the contract provides, in legal effect, that it is subject to Allen's ownership of the 4.84 acres at the time the contract was made and, since Allen's pleadings show he did not then own said tract but had to purchase 3.84 acres thereof, that Allen was, therefore, not entitled to enforce specific performance of the contract. In support thereof appellants rely on Hufstutler v. Grayburg Oil Co., Tex. Com.App., 48 S.W.2d 591, 592, wherein the court said:

"The parties have the right, of course, by proper stipulation to that

effect, to make the obligations of the purchaser conditional on the existence of title in the seller at the time the contract is made. This right appertains to the freedom of contract enjoyed by the parties."

 Appellants rely on the provision that "this contract of sale is subject to both tracts of land described above being vested in the present owners, the parties to this contract, and subject to both parties being able to convey merchantable title, free and clear of any and all encumbrances except those named herein." We do not think the contract as a matter of law requires the construction that the parties intended to make the obligations thereof dependent on the then ownership by the parties of said tracts. On the contrary, we think it was their intention to require only that each be able to convey to the other within the time required by the contract the respective tracts that each bound himself to convey. Appellants' present interpretation of the contract not being required as a matter of law, we have examined the entire record and find that it shows conclusively that the parties actually intended only to require that they have merchantable title at the time conveyance was required. Dr. Johnson's testimony conclusively shows that she knew when the contract was made that Allen only owned one acre of the tract he agreed to convey to her and knew that he was to obtain the remainder thereof from his father, which he did. Since the obligations of the contract were not conditioned on ownership of the tracts by the parties when the contract was signed it was sufficient that Allen had title and was able to convey same at the time required by the contract. 38 Tex.Jur. 719; Caprito v. Grisham-Hunter Corporation, Tex.Civ. App., 128 S.W.2d 149, 156 (D.J.C.); Bourland v. Huffhines, Tex.Civ.App., 269 S.W. 184, 187; Webb v. Consolidated Oil Co., 5 Cir., 100 F.2d 865, 868; Hufstutler v. Grayburg Oil Co., Tex.Com.App., 48 S.W. 2d 591, 593.

Appellants' second point is that the court erred in decreeing specific performance because the record conclusively shows that (a) the contract was contingent on Allen "receiving an approved loan of $4,000.00" and (b) that the jury found in answer to issue 5 only that Allen had obtained "approval of a $4,000.00 loan" and not that he had "received" a loan of $4,000.00 and (c) the judgment adjudicates that Allen shall procure the loan. This point is based on the provision that:

"This agreement is conditioned further and contingent upon the purchaser's receiving an approved loan of $4,000.00 on the 118.79 acre tract described above."

 We do not believe the contract required that Allen actually receive a loan on Dr. Johnson's land before a deed to it was executed and tendered to him. It is evident from the entire contract that this provision was inserted for the benefit of Allen. Dr. Johnson was to be paid $10,550 for her tract. It was to be paid "on the delivery and execution of the deed", by her to Allen, by payment of $5,550 in cash and conveyance to her of the four-acre tract. It was immaterial to Johnson where Allen got the money to pay her, but Allen reserved the right to obtain a loan on the 118.79 acres when the deed thereto was delivered to him. It was sufficient if Allen was able at that time to pay the cash consideration and convey merchantable title to the four acres. At the time the contract should have been concluded he had about $3,000 in the bank and he testified, in effect, that he could borrow $4,000 on the 118.79 acres which was to be conveyed to him by Dr. Johnson from either of two banks in the town where the case was tried. Johnson's deed was never delivered. It was not executed. Johnson did not, as required by the contract, deliver to Allen an abstract for examination. Without execution and delivery of the deed to the 118.79-acre tract to Allen the parties knew when the contract was signed that Allen could not actually "receive" a loan of $4,000 thereon. If Allen's testimony is believed, and the jury believed it, he did all that he could under these circumstances by obtaining an approval of a

loan of $4,000 on the 118.79-acre tract, which loan could not be consummated until after "delivery" of the deed by Johnson. The point is overruled.

■ Appellants' third point is that the court erred in submitting issue 3 over the following objection: "Because no cash payment was tendered to the defendants at the time said deed was filed, or any time thereafter." Appellants say the contract was contingent on Allen actually "receiving" a loan of $4,000 and, since he had not actually received such a loan and did not actually tender the money, Allen was never in a position to carry out his contract and, therefore, could not enforce performance, and said issue was immaterial. Issue three inquired whether Allen tendered a deed to the 4.84 acres to Johnson within a reasonable time after the contract was made. The jury found that he did. It is true that the only tender of the cash consideration by Allen was contained in his petition wherein he alleged he was ready, willing and able to perform his part of the contract, convey the 4.84 acres and pay the cash consideration upon delivery of the deed by Johnson to the 118.79-acre tract. It is undisputed that Johnson did not execute a deed to Allen but, on the contrary, conveyed the land to her brother. The contract provided that Allen might obtain a loan on the 118.79-acre tract. It could not have been contemplated that Allen should actually "receive" a loan thereon before Johnson executed the deed to him. Dr. Johnson having repudiated her contract, Allen was not required to do the useless thing of actually tendering her the consideration. It was sufficient under these circumstances for him to tender it in his petition, which he did. Burford v. Pounders, 145 Tex. 460, 199 S.W.2d 141, 144; Corzelius v. Oliver, 148 Tex. 76, 220 S.W. 2d 632, 635; Taylor v. Kaufman, Tex.Civ. App., 267 S.W. 526 (D.W.O.J.); Copeland v. Bennett, Tex.Civ.App., 243 S.W.2d 264, 267.

■ Appellants' fourth point is that the court erred in permitting Allen to testify that at all times since execution of the contract he had been ready, willing and able to perform his part of the contract over appellants' objection that it called for a conclusion and invaded the province of the jury. The court overruled the objection but instructed appellee's counsel to show "what" he had done. We find no answer in the record to said question. The point should be overruled for that reason. Allen was then asked whether he had tendered a warranty deed to the 4.84-acre tract into court and he testified he had. He was then asked whether he was ready, willing and able to pay into court the money required by the contract if the court ordered Johnson to convey the 118.79 acres to him. No objection thereto is found in the record. He answered the question "yes." He testified he could borrow $4,000 from either of two banks in the town where the case was tried and that on January 12, 1951 he had on deposit more than $3,000 and on January 25th he had a balance of more than $2,800 in one of said banks.

Appellants' fifth and sixth points are that the court erred in submitting issue 4, which inquired whether Allen "was ready, willing and able" to pay the cash consideration, "as specified in said contract * * *" over their objection that it was "too indefinite and does not specify any time" and that it was a mixed question of law and fact.

■ Under the fifth point appellants say that Allen's petition was filed on February 19, 1951 and that his deed was dated March 8, 1951, seventeen days after the suit was filed, and that he never tendered payment of $5,550 to appellants and that he was required, in order to obtain specific performance of the contract, to perform the obligations resting on him under the contract. They say that issue 4 was indefinite and did not fix any time at which the jury was required to find whether Allen was ready, willing and able to pay and that appellants were entitled to have the court fix a definite time in said issue; that the only reference to time in the issue was in the phrase "as specified in the contract" and that this called on the jury to interpret the contract and determine what time was meant. As authority for their sixth point,

that said issue was submitted over appellants' objection that it was a mixed question of law and fact they cite Coursen v. Goodloe, Tex.Civ.App.. 267 S.W.2d 259 and Kemper v. Police & Firemen's Ins. Ass'n, Tex.Com.App., 48 S.W.2d 254. In the Kemper case the court had submitted an issue inquiring whether the injury sustained resulted in total disability, as required by the terms of a contract. The court held that this permitted the jury to construe the contract and that construction of the contract was a question of law for the court and not a question of fact for a jury. They also cite Wonderful Workers of the World v. Winn, Tex.Civ.App., 31 S.W.2d 879 (Writ Dis.); Totten v. Houghton, Tex.Civ.App., 2 S.W.2d 530; City of Port Arthur v. Young, Tex.Civ.App., 37 S.W.2d 385 (Writ Ref.). In said cases juries were asked to find whether a party paid his dues according to the constitution and rule of the company; what was the reasonable cost of remedying defect in a building in such a way as to make it conform with a contract and specifications and whether dismantling of a bridge was a breach of a contract. We think there is merit to appellants' objections but that under the circumstances reversible error is not shown.

The plain and specific provision of the contract with reference to the time and amount of the cash consideration was simply that Allen should pay $5,550 on delivery of Johnson's deed to him. That is the only thing the court could have meant by the phrase "as specified in said contract." The contract, relative to this matter, was so plain and simple that a jury could not have been misled. There was no need for interpretation. The issue, simply stated, was whether Allen was ready, willing and able to pay $5,550 on delivery of a deed to the 118.79 acres. Under these circumstances, submission of said issue was not reasonably calculated to cause and did not probably cause rendition of an improper judgment and, therefore, was not reversible error.

Appellants' seventh and eighth points complain of the manner in which issue 8

was submitted. Said sue inquired whether "plaintiff at the present time is ready, willing and able to perform said contract of January 6, 1951." The jury answered the issue, "yes." Appellants objected because it was a mixed question of law and fact and "involved the finding of facts upon other multiple issues."

We think it was subject to the objection that it was a submission of a mixed question of law and fact. But it did not involve "other" issues. The second objection did not clearly and specifically point out to the court that it called for answers to more than one issue. We think it did not specifically and clearly point out to the trial court the matter objected to and the grounds of objection thereto as required by Texas Rules of Civil Procedure, rule 274. See Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000, 1002; Yellow Cab & Baggage Co. v. Green, Tex., 277 S.W.2d 92, 93; Naylor v. Lack, Tex. Civ.App., 243 S.W.2d 240, 243.

The jury found in answer to issues not objected to for said reasons and not subject to the objection that there was a submission of a mixed question of law and fact that Allen had tendered a complete abstract on the 4.84-acre tract to Johnson within a reasonable time; that he had tendered a deed thereto within a reasonable time; that he had obtained an approval of a $4,000 loan on the 118.79 acres within a reasonable time. It found, in effect, in answer to issue 4, that Allen was ready, willing and able to pay the cash consideration on delivery to him of a deed to the 118.79-acre tract and that he had paid the taxes on the 4.84-acre tract. It further found in effect that Johnson had breached the contract. We think that the findings made in answer to other issues required the judgment rendered and that the fact that issue 8 was a mixed question of law and fact was not reasonably calculated to injure appellants.

Appellants' last point asserts error in permitting Allen's counsel in his closing argument to the jury to state that the tele-

phone calls to Dr. Johnson on February 16th were made to try to get her to go through with the deal. Appellants' objections were that there was no evidence of the purpose of said calls and that the argument was not in response to argument of their counsel. Mr. Allen testified in response to questions by his counsel as follows:

"Q. State whether or not you had me make a telephone call to Mrs. Johnson to try to get her to go through with this contract? A. Yes, sir."

Dr. Johnson testified:

"A. Mr. Robert Allen called me a couple of times. I told him when it was ready he could call me collect, and I would come right back. He called me a couple of times, collect; but, he told me that the things would be ready in just a few days, it wouldn't be long until everything would be ready.

"Q. Now, he told you that on the first time he talked to you? A. Yes, sir.

"Q. How long was it until he called you again? A. Well, I don't know exactly, but it was a few days between the calls.

"Q. Was it a week, or something like that? A. Yes, sir, I think so.

\* \* \* \* \* \*

"Q. Okay, go ahead. After the second call what happened? A. After the second call, I won't state the date or how many days, but a few days afterward he called me and paid his own telephone call, and said 'Mrs. Johnson, I am ready to close the deal' and to come on out.

"Q. All right, did you come? A. Yes, sir."

Such testimony seems to justify said argument and authorize overruling appellants' objection that there was "no testimony as to what the conversation was." However, appellants point to the statement in their bill of exception that "there was no testimony as to the nature of the calls of February 16th \* \* \*." Appellants correctly contend that where there is a conflict between the provisions of a bill of exception and the statement of facts those in the bill control. R.C.P. 372(k). However, disregarding all testimony as to what was said, there is ample support in the record for much of said argument, including the conclusion inferable therefrom that the calls from Allen, or his counsel, were to try to get "her to go through with the deal on the 16th." There was in evidence a check from Allen to his counsel dated February 16, 1951 with a notation on the margin that it was "for telephone calls on contract with Johnson" and evidence to the effect that Allen was trying to get Dr. Johnson to carry out the contract, that she was called by Allen or his counsel over the telephone about February 16th and that the suit was filed February 19th, without any testimony as to what was said in such telephone conversations. It was a reasonable inference from other testimony that the purpose of the calls was to try "to get her to go through with the deal \* \* \*." Under the circumstances, we do not think there was "such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment \* \* \*." R.C. P. 434.

The judgment is affirmed.