CASAS v. KNORBIN et ux.

No. 12047.

Court of Civil Appeals of Texas. Galveston.

Feb. 3, 1949.

Rehearing Denied March 10, 1949.

Michael Amato and Graves & Graves, all of Houston, for appellant.

Frank J. Knapp, of Houston (Butler, Binion, Rice & Cook, of Houston, of counsel), for appellees.

CODY, Justice.

For the purposes of this appeal it is sufficient to state that this was a suit by appellant to recover the cost price of $4.75 per case on approximately 1048 cases of "Nortena" beer, which arose out of a lease contract, by the terms of which appellant

leased from appellees the "Old Mexico Tavern" which is located at 120 Gray Avenue, in the City of Houston, and is a restaurant at which Mexican foods were chiefly served. The term of the lease was for three years, beginning July 1, 1944, and ending June 30, 1947. The dispute has arisen under paragraph 14 of the lease which reads as follows:

"It is agreed that upon termination of this lease, regardless of how it is terminated, Lessee, his heirs or assigns are obligated and promise to sell to Lessor, their heirs or assigns, and Lessors, their heirs and assigns are obligated and promise to buy from Lessee, his heirs or assigns, all of the merchandise, including curios, owned by Lessee and located on the leased premises at such time at cost price of such merchandise but Lessors shall not be obligated to buy more than $7,000.00 worth at cost price of such merchandise. In the event the lease terminates because of the death of David Casas or because of his physical disability to further operate said business or because of its term termination on June 30th, 1947, then Lessors obligate themselves and they promise to pay for same within thirty days after such termination but if the lease terminates for any other reason, as provided for herein, then Lessors promise to make such payment in monthly installments of as much as $1,000.00 a month, the first monthly payment being due within thirty days from the date of such termination. To better secure such purchase money payment, Lessee shall have a lien on said merchandise then on hand, subject to sale in due course of trade, however, as well as upon the items listed on 'Exhibit A' attached hereto. In the event Lessee is indebted to Lessors at the time of termination of this lease, then Lessors may offset such amount against any amount due Lessee."

For the purpose of understanding the pleadings of the parties and the issues made thereby, the following brief statement is made of the undisputed facts. Prior to the date of the lease the appellant had been an employee of appellees, managing the restaurant business. By the terms of the lease appellant was to pay appellees the sum of $1300.00 per month. At the expiration of the lease, it was undisputed that appellees were going to conduct the restaurant business on said premises; and that appellant was going to open and conduct a competing business. And it is further undisputed that a few days before the expiration of the lease, appellant caused to be delivered upon the premises of the Old Mexico Tavern 752 cases of Nortena bottle beer which constituted a part of a shipment which he had imported from Mexico some 10 months previously. It was further undisputed that during the year 1946 there was a scarcity of domestic brands of beer available in the City of Houston, and that there were shipped from Mexico, consigned to appellant, some 6000 cases of Nortena beer. It was also not disputed that beer greatly aids in the sale of Mexican food and that, as the business had been conducted by appellees, and while appellant had managed it as their employee, beer had been obtained in lots to last from 10 days to 2 weeks and that this had amounted to about 42 cases to cover said period of time.

Appellant's petition, insofar as it sought a recovery for the beer, alleged, among other things, the terms of paragraph 14 quoted above and in effect plead that the beer in question had been delivered to appellees within the purview thereof and that appellees were bound by the terms thereof to pay therefor, which they had failed and refused to do, etc.

Appellees' answer on the merits consisted of a general denial, and they answered specially that: During the year 1946, appellant had imported several thousand cases of Nortena beer from Mexico for the purpose of speculation during the period of the scarcity of domestic beer. That the beer in question was a brand unknown to the public and of inferior quality and did not come in uniform cases or bottles and was unpalatable. That the beer had been stored in a garage for almost a year and had deteriorated in quality and could not be sold and that appellant had conceived the fraudulent scheme of removing the beer from the garage where it was stored and placing same on the premises of the restaurant just prior to the expiration of the lease in order to try to collect therefor from appellees under the terms of the lease.

Appellees further alleged that the beer was not merchandise within the meaning of paragraph 14, that it was unfit for human consumption, was not salable and was worthless. Appellees also filed a cross-action but the matters covered thereby are not in issue on appeal.

No exceptions or objections were made to the court's charge by either of the parties, and we are on appeal concerned only with Special Issues Nos. 1, 3, and 4. Said special issues and the answers thereto are as follows:

Special Issue No. 1 reads: "Do you find from the preponderance of the evidence that the plaintiff herein, David Casas, purchased the Nortena beer in question solely for the purpose of selling it at retail at his place of business known as the 'Old Mexico Tavern?'" Which was answered, "We do not."

Special Issue No. 3 reads: "Do you find from a preponderance of the evidence that the Nortena beer located on said premises at the expiration of such lease was not merchantable?" Which was answered "It was not merchantable."

In connection with said Special Issue, the following definition was given, "By the term 'merchantable' as used in connection with this charge is meant capable of being sold to the public in the normal course of such restaurant business".

Special Issue No. 4 reads: "Do you find from a preponderance of the evidence that the placing of such 'Nortena beer' on the leased premises by David Casas was done by him in bad faith?" Which was answered "Yes".

Appellant seasonably filed and presented a motion for judgment notwithstanding the verdict.

Upon the jury's answers to the foregoing issues, and upon stipulations and other matters not before us on appeal, the court rendered an over-all judgment that appellant take nothing, and that appellees recover from appellant the sum of $836.89, and costs.

Appellant has predicated his appeal on five points. His points 1, 3, and 5 present, respectively, that the court erred in rendering judgment refusing appellant recovery on the "Nortena" beer insofar as such judgment may have been based on the jury's answers, respectively, to Special Issues Nos. 3, 1, and 4, because there was no evidence to authorize the submission thereof, respectively, and no evidence to support the jury's answer thereto, respectively, and because the evidence was not sufficient to support the jury's answers to said Special Issues, respectively, and because said answers, respectively, were not in accordance with the preponderance of the evidence.

Appellant's points 2 and 4 complain, respectively, that Special Issues Nos. 1 and 4 presented no ultimate issue of fact either as a ground of recovery for appellant, or ground of defense for appellees, and were wholly immaterial to any issue in the case.

We overrule appellant's point 1.

█ It is apparent that Special Issue No. 3, as framed, involved a construction by the court of paragraph 14 of the lease contract. By submitting said issue, the court in effect held that Nortena beer was merchandise, and that it was intended by the parties that the terms of paragraph 14 should comprehend only merchandise which was merchantable. The court also defined the term "merchantable", as used in the charge and since no objections were made to the definition, and no other definition tendered to the court, everyone to this suit is now bound by the definition. Our task under this point is merely to examine the evidence relative to the issue, and determine by a well settled rule whether there was sufficient evidence to sustain the jury's finding that the beer was not merchantable, as that term is defined in the issue. The definition did not confine the jury to beer that was not fit for human consumption, or to beer that was not merchantable because it was not a brand for which the public in Houston has not acquired a taste, or to beer that was not merchantable because it could not sell when coming into competition with standard brands of American beer, after the scarcity of such beer was relieved.

It is quite clear that the jury might have legitimately inferred from appellant's own

testimony that he did not regard the beer as being merchantable in free competition with standard brands of American beer. He had built the Santa Anita Restaurant in which to sell Mexican food after the expiration of the lease in question. He admitted that he removed all the groceries from the leased premises to the Santa Anita Restaurant, though he testified this was not very much. But he left all of the Nortena beer on the leased premises, moving 752 cases of it on to the premises just before the lease expired for the admitted purpose of collecting the price from appellees. He admitted that he knew of no other way that he could have got his money back out of the beer. "If I would have known of such a place, I would have sold it to them instead of letting Knorbin (appellee) have them". "Q. In other words, it is your opinion that nobody would buy that beer in its condition? A. Not that I know of".

Mr. Angelo testified for appellant. He still owed appellant at the time of the trial about $1,500.00 on a note that had originally been twice as large. At the trial appellant testified that he had loaned Mr. Angelo the money covered by the note in order to pay for Nortena beer which had been consigned to appellant. He further testified that he had forgot about the matter of the note when his deposition was taken. Appellees insisted that a more uncharitable construction be placed on the note transaction, they insisted that it evidenced that appellant was engaged in the business of importing Nortena beer to sell, and that the sudden return of an ample supply of domestic beer caught appellant overstocked. Mr. Angelo's testimony, taken in the light most favorable to supporting the jury's verdict, was to the effect that much of the beer was contained in cardboard boxes, and in catsup bottles. He admitted that his customers began to kick about the beer in December, 1947. He admitted that in the early part of 1948, the beer was not merchantable.

A chemist for the Gulf Brewing Company testified that the "shelf-life" of beer was two months, and that "within two months, stored at 37 degrees centigrade your beer would be unpalatable and unsalable". He was not asked if beer, stored in Houston in a garage in July, 1946, and kept there until three or four days before July 1, 1947, as was here the case would be merchantable. And since laymen are not experts his testimony in this respect can hardly be considered as supporting the verdict. But he did testify, that from a chemical analysis made during the trial, which was about a year after the expiration of the lease, that the beer was not salable.

Appellee Knorbin testified that the beer was in more or less the same condition when it was left on the leased premises as at the time of the trial, having the same cloudy appearance, which the Gulf Brewing Company expert had testified indicated spoiled beer.

We think that the jury's answer to Special Issue No. 3, required the court to render judgment that appellant recover nothing on account of the beer. We will therefore not discuss appellant's points 3 and 5, other than to say that we have reviewed the evidence and considered it sufficient to support the jury's answers to Special Issues 1 and 4. We overrule appellant's points 3 and 5.

Our ruling that the jury's answer to Special Issue No. 3 was decisive of appellant's right to recover on the beer would require that we hold that, even if appellant's points 2 and 4 should be correct, academically speaking, this would furnish no ground to reverse the court's judgment. We need not therefore prolong this opinion to discuss appellant's points 2 and 4. So far as the form of Special Issues Nos. 1 and 4 are complained of by appellant's points 2 and 4, such objection has been waived by failure to object to the court's charge seasonably. See Rule 272, Texas Rules of Civil Procedure, Barrick v. Gillette, Tex.Civ.App., 187 S.W.2d 683.

No reversible error being urged, we affirm the judgment.