**T. J. SULLIVAN, Appellant,**

v.

**J. B. AIRHART et al., Appellees.**

**No. 6958.**

Court of Civil Appeals of Texas.

Amarillo.

May 16, 1960.

Rehearing Denied June 20, 1960.

Brown & Shuman, Lubbock, for appellant.

E. H. Boedeker, Lubbock, for appellees.

NORTHCUTT, Justice.

This is a suit upon a promissory note for the principal sum of $5,000 executed by T. J. Sullivan, payable to W. B. Evans, Lloyd Evans, and Paul Walker. W. B. Evans transferred and assigned all his interest in the note to J. B. Airhart. J. B. Airhart, Lloyd Evans, and Paul Walker, hereinafter referred to as appellees, brought this suit against T. J. Sullivan, hereinafter referred to as appellant, to recover upon said note. Sullivan answered pleading failure of consideration.

W. B. Evans, Lloyd Evans, and Paul Walker sold an interest in two certain oil leases to T. J. Sullivan for $15,000 cash and the $5,000 note sued upon herein. The two leases are presented on this appeal as A-Lease and B-Lease. There is no contention as to failure of consideration so far as A-Lease is concerned. The case was tried to a jury, and after all parties closed their evidence, the trial court instructed the jury to return a verdict in favor of the plaintiffs. The court rendered judgment in favor of appellees for principal interest and attorneys' fees as specified in the note. From that judgment the defendant perfected this appeal and presents the same upon one point of error, as follows:

"The court committed reversible error in refusing to submit to the jury the fact issue presented by the defendant's pleadings and cross-action, and his evidence in support of same, which showed that the $5,000.00 note should have been cancelled for failure of consideration because the 'B' Lease had terminated for failure to pay the rentals prior to the date of the attempted assignment."

It is the law of this state that if there is any evidence of such probative force as would justify a finding in favor of the party against whom a verdict was directed the case should be reversed. It is further the rule that the trial court in passing upon a motion for an instructed verdict must take as true all testimony that is favorable to the party against whom the instructed verdict is sought. In the case of Air Conditioning, Inc. et al. v. Harrison-Wilson-Pearson, 151 Tex. 635, 253 S.W.2d 422, 425, the Supreme Court stated:

"The courts of this State have repeatedly held that it is error to instruct a verdict when the evidence raises any material issue. In passing upon the question of the authority of the trial court to instruct a verdict, as was done in this case, the evidence must be considered most favorably in behalf of the

party against whom the verdict is instructed. A peremptory instruction is warranted only when the evidence is such that no other verdict should be rendered. If there is any conflicting evidence in the record of a probative nature, a determination of the issue is for the jury. White v. White, 141 Tex. 328, 172 S.W.2d 295; Stevens v. Karr, 119 Tex. 479, 33 S.W.2d 725."

■ So the only question before this court is whether or not there was evidence of such probative force as to present any question of fact to be passed upon by the jury and whether or not a favorable answer as to failure of consideration would have entitled the appellant to have judgment entered in his favor.

When this deal, concerning the leases, was being consummated the appellant went to Jacksboro and secured the services of Mr. Moore, an attorney to represent him in closing the deal. Appellant had the attorney to check the record and was advised by the attorney that the title was all right. Appellant testified that before the deal was closed there was some question that Mr. Carter, the original lessor, not receiving his payments, and Mr. Walker promised, "I'll give you a letter stating that we will clear up what technicality there is to give title to the lease." The letter in question introduced by appellant is as follows:

"Jacksboro, Texas
"March 24, 1955
"Mr. T. J. Sullivan
"Lubbock, Texas

"Dear Sir:

"In keeping with our agreement and assignment to you of a certain oil, gas and mineral lease covering 265 acres, more or less of the T. E. L. & C. Survey No. 3319, Abstract No. 472, Jack County, Texas, we agree to clear the title and meet all requirements requested by the Sinclair Oil Purchasing Company, the pipe line company taking the oil from said lease.

"If this is your understanding of our agreement, please sign on the line designated below.
            "Evans, Walker and Evans
            "By Paul Walker
                    "Partner
"Accepted:

            "Assignee"

The transfer to appellant as to the B-Lease, the only lease here involved states, "It being specifically understood that the undersigned have only one producing well on said lease and that the same is hereby assigned together *with such interest as the undersigned might have in said lease."* (Emphasis ours.) In this same connection it is to be noticed that appellant produced several thousand dollars of oil from these wells and in November, 1955 sold the A-Lease for $18,000 and at the same time sold all the equipment on B-Lease. This was before Mr. Carter ever cancelled the B-Lease. There is nothing in this record to even indicate that Sinclair Oil Purchasing Company ever required or requested anything to be done about this lease as mentioned in the letter above.

Concerning the original agreement and assignment of the oil and gas lease at the time of this trial the following proceedings took place:

"Q. All right. Now, Mr. Sullivan, when this instrument was drawn up, Mr. Moore, again, drawed this instrument up, didn't he? A. That's right. The banker told me there were two lawyers there and I could get one, and later on I talked to Mr. Moore and I found one—

"Q. Mr. Sullivan, I just asked you one question, if Mr. Moore drew this instrument? A. He didn't draw up the assignment. He drew the letter.

"Q. Who drew the assignment up? A. I don't know.

"Q. Now, at the time the assignment was drawn, you dictated some of

the terms and provisions that went in it? A. No.

"Q. Well, were you present? A. I had those assignments—they drew them up and signed them and I read them over or had him to. I didn't read it.

"Q. You discussed with him what the assignment should contain and what it shouldn't contain, didn't you? A. I believe—I don't recall that we discussed what it contained. He told me what was in there.

"Q. Now, I believe I asked you before on a deposition (Mr. Huffaker reading) 'All right—' Question: 'And it was drawn, the papers were drawn, and you were sitting there and assisted Mr. Moore in obtaining the facts concerning what should be put into that instrument, weren't you?' Answer: 'Well, he put it in there.' Didn't you give that answer? A. In the letter.

"Q. All right. Now, I'm talking about your testimony, Mr. Sullivan. Did you give that testimony? A. Well, I told you at the time there were a lot of things I didn't remember. I was answering what I could remember.

"Q. (Mr. Huffaker reading) 'I understand, but you were sitting right there at all times when all the transaction was discussed, and Mr. Moore obtained the information from which to draw the assignment, weren't you?' Answer: 'Yes.' Question: 'Did you suggest different things? Did you tell him what you were paying and how it was to be paid? Are you the one that told Mr. Moore what those facts were?' 'Yes.' Question: 'All right—' A. You are referring to the letter.

"Q. (Mr. Huffaker reading) 'And based upon what you told him the instrument was drawn and signed and the consideration was paid, wasn't it?' Answer: 'Yes, sir.'"

It is stated in the case of Continental Cas. Co. v. Fountain, Tex.Civ.App., 257 S.W.2d 338, 344, writ refused as follows:

"We believe that the case of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1063, lays down the rule applicable to this case: '* * * it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being "any evidence"; * * *.' See also Waco Drug Co. v. Hensley, Tex.Com. App., 34 S.W.2d 832."

In the case at bar appellant only purchased what interest the Grantors might have in B-Lease. Appellant also sold the equipment from the B-Lease. Under this record, we think the presumption should be in favor of the trial judge's action in directing a verdict and that there was not shown a failure of consideration. Judgment of the trial court is affirmed.

DENTON, C. J., not participating.