James H. STUCKEY et al., Appellants,

v.

UNION MORTGAGE & INVESTMENT COMPANY, Inc., Appellee.

No. 54.

Court of Civil Appeals of Texas.

Tyler.

Oct. 22, 1964.

Rehearing Denied Nov. 5, 1964.

Herman W. Mead, Houston, for appellants.

John T. Golden, Vinson, Elkins, Weems & Searls, Houston, for appellee.

DUNAGAN, Chief Justice.

This suit was instituted by Union Mortgage & Investment Company, Inc., Appellee, against James H. Stuckey and Glen R. Bowman, a partnership doing business as Bowman-Stuckey Properties, Appellants, seeking to recover a commission upon an alleged oral contract under which Appellee agreed to secure for Appellants a loan commitment for the refinancing of Appellants' Community Center, located in Houston, Texas. It was alleged that for the obtaining of a loan commitment in the amount of $225,000.00, Appellants agreed to pay Appellee a fee of one per cent of said sum. Appellee alleged its performance in the procurement of the commitment for Appellants and a refusal by Appellants to pay the fee. A verdict was rendered favoring Appellees. Appellants appealed from a judgment entered against them for the amount of $2,250.00

Appellants are the owners of a community center in Houston, Texas. Appellee is a

loan brokerage company engaged in the business of securing loan commitments for its clients. Being desirous of a loan for additional improvements on these properties, James H. Stuckey, one of the partners, contacted Appellee's president, C. T. Traylor, Jr., about October, 1959, at which time a loan in the amount of $225,000.00 was sought by Appellants. From that date until about December, 1959, various negotiations were carried on, but apparently Traylor had been unsuccessful in procuring a loan for Appellants. During this same period, Stuckey likewise was making efforts, in his own behalf, to secure the loan from various lending institutions. His efforts, like Traylor's, were meeting with no success.

In December, 1960, Stuckey made an application for the loan with American National Life Insurance Company. The latter refused the loan in January, 1961. About this time, Traylor again contacted Stuckey requesting a further opportunity to secure the loan commitment. Stuckey consented and forwarded to Traylor the loan application dated January 26, 1961. After January 26, 1961, and apparently while Appellee was seeking the loan commitment from General American Life Insurance Company, Stuckey made an application for the loan with Jefferson Standard Life Insurance Company. The latter gave Appellants a commitment dated February 23, 1961. Stuckey admitted that he agreed to pay the one per cent fee to Appellee if it was successful in obtaining the type of loan Appellants desired. Appellee succeeded in obtaining a loan commitment which was transmitted by it to Appellants by letter dated February 24, 1961. This case arises because of the failure of Appellants to pay to Appellee the one per cent brokerage fee—it being Appellants' contention that Appellee had not procured an unconditional loan commitment in accordance with the application and, therefore, had earned no fee.

By its first Point of Error Appellants complain of the Trial Court's action in overruling their Motion for Instructed Verdict.

Appellants contend that Appellee failed to establish the existence of a contract in that Appellee had failed to prove an "offer and acceptance."

In determining the correctness of the Trial Court's action in this regard, we must determine whether there was sufficient evidence of probative force to raise a fact issue on a material question. Sullivan v. Airhart, 336 S.W.2d 776 (Tex.Civ.App., 1960), no writ; Air Conditioning, Inc. v. Harrison-Wilson-Pearson (1960), 151 Tex. 635, 253 S.W.2d 422. In considering such Motion, the evidence must be considered most favorably in behalf of the party against whom the instruction is sought. White v. White (1943), 141 Tex. 328, 172 S.W.2d 295; Stevens v. Karr (1930), 119 Tex. 479, 33 S.W.2d 725. This is the rule though the evidence may be legally insufficient to support a verdict. Wallace v. Southern Cotton-Oil Co., 91 Tex. 18, 40 S. W. 399; Maryland Casualty Co. v. Morua (Tex.Civ.App., 1944), 180 S.W.2d 194, er. ref.; Great Atlantic & Pacific Tea Company v. Giles (Tex.Civ.App., 1962), 354 S. W.2d 410, er. ref., n. r. e. A peremptory instruction should not be granted if the evidence raises any material issue, and such an instruction is warranted only when the evidence is such that no other verdict could have been rendered. Stevens v. Karr, supra. Applying these rules, we conclude that the Trial Court correctly overruled Appellants' Motion for Instructed Verdict.

Appellee's suit was one for a fee allegedly earned under an express oral contract with Appellants, whereunder Appellee agreed to obtain a loan commitment for Appellants. Allegations of performance of the contract by Appellee and a refusal to pay on the part of the Appellants were made.

Appellants denied generally Appellee's allegations; asserted further that if such an oral agreement, as alleged by Appellee, was made, the same was for a period of time of less than six months and that Appellee was unable to perform its obligations under such oral contract within such period of

time. Appellants further alleged that Appellee was never able to obtain an unqualified commitment and that the only one procured by Appellee was a qualified conditional commitment.

Under the pleadings of Appellee, it had the burden to establish the oral contract and to secure findings that it had performed its obligation thereunder, or that Appellants had either accepted the performance as shown by Appellee, or had, by its conduct, ratified the same. Hollums v. Hancock, (Tex.Civ.App., 1944), 180 S.W.2d 209, no writ.

In Stevens v. Karr, supra, it is stated that a commission ordinarily becomes payable on completion of the transaction which the broker was employed to negotiate unless stipulated to the contrary. If, by the contract of employment, the broker is merely to find a customer who is able, ready, and willing to enter into a transaction with the principal on terms prescribed by him, the broker is entitled to compensation upon performing that service, whether or not the principal completes the transaction.

If the broker finds a customer who is ready, willing and able to consummate the transaction on terms prescribed by the principal, or even on terms that are later ratified as satisfactory by the principal who later refuses to complete the transaction, the broker is nonetheless entitled to his compensation. Hollums v. Hancock, supra; Harrison Bldg. Co. v. B. F. Dittmar Co. (Tex.Civ.App., 1928), 4 S.W.2d 1038, no writ. Having alleged an express oral contract with Appellants to procure the loan commitment and its performance, it was, of course, incumbent upon Appellee to produce evidence of probative force raising these issues. Whether there was performance on the part of Appellee, or whether there were circumstances from which the jury could reasonably infer performance, were matters for the jury, provided there was evidence thereof. The question of performance, assuming evidence raising the

issue, was for the jury. Kitchen v. Lloyd, (Tex.Civ.App., 1928), 14 S.W.2d 335, no writ. The basis of Appellants' Motion for Instructed Verdict is that there was no evidence of an "acceptance" in the case. Appellants say that if the application submitted by Stuckey is the offer involved, there was no unqualified "acceptance" because the commitment submitted to Appellants was not identical with the application. Further, if the commitment submitted by Appellee is considered a "counter-offer," Appellants assert there was no evidence showing an "acceptance" of such counter-offer. In either event, it is Appellants' position, there was no evidence of the formation of a contract. We do not agree. Appellee pled that it orally agreed to secure a loan commitment for Appellants in the desired sum of $225,000.00. For the obtaining of such a commitment, Appellants agreed to pay Appellee a one per cent commission. Appellee alleged it did procure such a commitment acceptable to Appellants, but Appellants refused to pay the fee. Under Appellee's pleadings, it was unnecessary that the commitment be actually used by Appellants in order to entitle Appellee to its commission. If Appellee procured the loan commitment desired by Appellants, or such a loan commitment acceptable to them, by such performance Appellee had earned the commission. The fact that Appellants declined to use the commitment procured by Appellee would not necessarily preclude its recovery. In order to determine whether there was any evidence of probative force raising these issues, a review of the evidence in some detail is necessary.

C. T. Traylor, Jr., president of Appellee, testified that after previous efforts in 1959 to procure the loan commitment had failed, he called Stuckey in January, 1961, and inquired as to whether the loan had been secured. Stuckey replied that it had been submitted to American National Life Insurance Company and he was then awaiting a reply. Stuckey advised him that if he did not get an answer within seven to ten days he would again talk to Traylor. In about

two weeks Stuckey called Traylor and advised him that American National Life Insurance Company had declined the loan, and he then asked Traylor if he desired to resubmit the application. Traylor replied affirmatively and told Stuckey that it would not take much time to determine whether he could get the loan commitment inasmuch as much of the work had already been performed. Traylor denied that Stuckey gave him any specified time within which to procure the commitment. Traylor advised him the loan application would be submitted to General American Life Insurance Company. Stuckey at that time, gave Traylor an application fee of $450.00. According to Traylor, the parties had a complete understanding that Traylor's fee would be one per cent of the amount of the loan commitment and Stuckey agreed to pay such fee. Traylor further testified that on the day prior to the issuance of the loan commitment from Appellee to Appellants (February 24, 1961), Stuckey called him and asked if the commitment would be forthcoming. Traylor replied that they would have it the following day.

On the following day the loan commitment was given Appellants. The only question raised by Stuckey was the absence of a prepayment privilege in the loan commitment. According to Traylor, although it was not normal to put such prepayment privilege in the commitment, Traylor procured a letter giving such privilege and delivered it to Stuckey the following day. Traylor was out of town for a few days and, upon returning, contacted Stuckey inquiring as to whether the fee would be forthcoming. To this Stuckey replied "yes," and further advised Traylor that he had Appellee's loan commitment at the bank and as soon as the bank approved the construction plans, he would notify Traylor as to whether he would pay the fee in cash or by a lien placed against the property. Traylor further testified the commitment he procured was a standard commitment and, in the industry, he had never seen an "unqualified" commitment. Thereafter, Traylor again called Stuckey who told him the commitment was still at the bank. At no time after the loan commitment was delivered to Stuckey did he ever advise Traylor he did not want the commitment. Traylor thought Stuckey was using the loan commitment. It was not until approximately two weeks later that Traylor learned that Stuckey was not going to use the commitment. When questioned by Traylor as to why he was not using the commitment, Stuckey told him he was not going to accept it but he refused to return the commitment to Traylor. Stuckey would give no reason to Traylor for not using the commitment.

Called as an adverse party, Stuckey testified in detail concerning the transaction between the parties. He corroborated Traylor's testimony relating to the latter's attempts to secure a loan commitment from the latter part of 1959 until December, 1960. According to his testimony, Stuckey had likewise made numerous attempts to procure the loan and his application to American National Life Insurance Company of Dallas was declined in January, 1961. He admitted that the type of commitment he desired was not given Traylor by any written memorandum or letter, and that the parties had numerous discussions relating to the type of loan desired by Appellants. He admitted that, customarily, money promised by a loan commitment is not available until the building is finished and approved by the lending institution. After a loan commitment is procured, according to Stuckey, interim financing is usually necessary and that matter is handled through a local bank. He testified that he expected from Appellee a loan commitment from a lender which could be presented for interim financing pending completion of the improvements. He admitted that they were expecting to use interim financing. At the time Appellants signed the application form for Appellee, they made two payments by check—one to Appellee for $40.00 and the second to American General Life Insurance Company for $450.00, the latter being a "closing fee"—but Stuckey did not know

the purpose of the other check. Stuckey admitted that the amount of the commission was agreeable to him if Appellee was successful in obtaining the type of loan desired. At about the time the application form was signed by Stuckey on January 26, 1961, he forwarded to Traylor financial reports. Leases existing between the tenants and Appellants on the properties had theretofore been delivered to Appellee for submission to the lending institution. Stuckey did not know the exact date the written application given Appellee was submitted to General American Life Insurance Company. He further testified that about two weeks following January 26, 1961, he personally made an application for the loan with the Jefferson Standard Life Insurance Company. The latter gave Appellants a commitment dated February 23, 1961. Stuckey could recall no conversation or discussion of the matter after February 1, 1961, prior to receiving the commitment of Jefferson Standard on February 23, 1961. Stuckey testified further that he had no quarrel with the commitment that Traylor submitted dated February 24, 1961, except that paragraph 5 of Appellee's loan commitment required that all leases on the properties be satisfactory to General American Life. In comparing the two commitments, namely the one submitted by Appellee and the one secured by Stuckey from Jefferson Standard Life Insurance Company, Stuckey admitted there were very minor differences between them. An examination of the Jefferson Standard Life commitment and paragraph 4 shows that the commitment likewise provided for an assignment of satisfactory leases. Stuckey further admitted that prior to February 24, 1961, he had not advised Traylor that he did not want the loan from General American Life Insurance Company. There is no testimony that prior to that time he 'demanded or requested the refund of any moneys he had advanced to Traylor with the application form. Stuckey testified when asked if there was any reason he would not give the loan commitment back to Appellee Traylor as follows:

"Q. It wouldn't have been of any further use to you?

"A. Not after we decided not to use it, except to use in this case.

"Q. You never did request this application be withdrawn.

"A. I am sure I did not.

"Q. You had to pay no broker's fee with Jefferson Standard?

"A. It was negotiated directly with the company."

Stuckey admitted that he never notified Traylor that he had applied to Jefferson Standard for a loan or that he did not desire for Traylor to do any further work on procuring the loan commitment. Stuckey did not inform Traylor that he had obtained the loan from Jefferson Standard until the latter part of February, 1961. At that time, Stuckey had already received Appellee's loan commitment letter. The following testimony by Stuckey is significant:

"Q. You didn't tell him though that you had applied with Jefferson Standard even while he was working on this case with General American?

"A. No, I didn't.

"Q. Is there any reason you didn't tell him?

"A. No particular reason. I didn't assume that he should know all my business.

"Q. In other words you were putting in two requests for commitments and hoping that you would get the best one.

"A. I see nothing wrong with putting in ten.

"Q. That is what you did. It that right?

"A. That is correct."

The evidence raised issues as to whether Appellee had performed its obligation under the contract alleged or, if there had not been full performance, whether Appellants accepted such performance as made by Appellee so as to entitle it to the commission. The versions of the parties differed materially and, under such circumstances, it was for the jury to resolve the differences and determine from all of the facts and circumstances in evidence the existence of the contract, its terms as contemplated by the parties and whether Appellee had performed it. Bell v. Keays (Tex. Civ.App., 1907), 100 S.W. 813, no writ. Performance vel non of the contract by Appellee, under the facts and circumstances in evidence, was a proper question of fact for the jury. Hamilton v. Wm. H. Swanson Film Co. (Tex.Civ.App., 1918), 206 S.W. 574, no writ; Yaeger v. Long Bros. Drilling Co. (Tex.Civ.App., 1941), 147 S.W. 2d 276, er. ref.; Morgan v. Young (Tex. Civ.App., 1947), 203 S.W.2d 837, er. ref., n. r. e.

We conclude that such evidence, together with all reasonable inferences to be drawn therefrom in the light most favorable to Appellee, was amply sufficient to raise the issues submitted. The Trial Court did not err in overruling Appellants' Motion for Peremptory Instruction. Likewise, the Trial Court properly overruled Appellants' Motion for Judgment Non Obstante Veredicto, Appellants' fifth Point of Error.

Appellants cite and rely principally upon the case of Hutchings v. Binford (Tex.Civ. App., 1918), 206 S.W. 557, no writ. Binford employed Hutchings, a loan broker, to secure a loan for him with an agreement for a commission of $400.00 to be paid for such services. The broker entered into negotiations with a lender which resulted in Binford making a written application to the lender for a loan. The application was approved. The lender prepared the loan papers and forwarded them to a bank with instructions to deliver the checks upon execution of the papers by Binford. The Deed of Trust contained certain conditions and provisions which, it later was claimed, were not within the contemplation of the parties. Binford resided outside of the state and his negotiations for the loan had been conducted through his son, who did not keep his father advised of the facts causing the delay or progress made in closing the loan. Meanwhile, Binford made arrangements for the loan elsewhere and, when notified that the lender's papers were at the bank, did not examine them but declined outright to proceed further with the loan. It was admitted that the terms and conditions of the loan as prepared by the lender did not correspond to the terms and conditions of Binford's application. In order to have complied with the conditions of the loan commitment, it would have been necessary for Binford to have raised elsewhere an additional sum of $6,000.00. The Court, in denying relief to the broker, held that he did not establish that he had procured a loan on the terms authorized or that Binford had ratified or approved the departure. The Court states, however, at page 559: "He had the right, of course, if he saw fit to do so, to vary the terms of the loan contract, and, if it was accepted on such varied terms, the loan broker would have been entitled to his commission;" Binford did not know of the variance and, therefore, could not be held to have accepted it. There was no claim that Binford accepted the loan commitment in the terms proposed, or even agreed to pay a fee with knowledge of the changes. Moreover, the changes were substantial and material and greatly affected the purpose for which Binford sought the loan. In the case now before us, the facts and circumstances surrounding Appellee's commitment raised issues of fact as to Appellants' satisfaction with or acceptance of Appellee's performance. These features clearly distinguish the Hutchings case from the one under consideration.

By second, third and fourth Points of Error Appellants complain of the Court's action in submitting Special Issues 1, 2 and 3; the Court's failure to submit its five requested Issues; and its failure to disre-

gard the jury's findings as to the Issues submitted.

The Court submitted three Issues. Special Issue No. 1 inquired as to whether Appellants, through James Stuckey, on or about January 26, 1961, orally contracted with Appellee to secure for it a loan commitment; Special Issue No. 2 inquired as to whether Appellee, in accord with the contract between the parties, secured a loan commitment for Appellants; and Special Issue No. 3 inquired as to whether Appellants agreed to pay Appellee a one per cent commission contingent upon Appellee securing for Appellants a loan commitment from General American Life Insurance Company in accordance with the written loan application dated January 26, 1961, submitted by Appellants. Each of the Issues was answered favorably to Appellee.

Prior to submission of the cause to the jury, Appellants objected to the form of Special Issues 1 and 2 upon the ground that the inquiries did not refer to the written application of Appellants' dated January 26, 1961, directed to General American Life Insurance Company. This objection was overruled. No objection was made by Appellants to Special Issue No. 3 or to any other portion of the charge.

 Under Rule 274, Texas Rules of Civil Procedure, a party objecting to the Court's Charge must point out distinctly the matter to which he objects and the grounds of his objection. It must identify the defect, the respect in which the Issue is allegedly defective, and the reasons why the same is defective. Failure to do so results in waiver. Associated Indemnity Corp. v. Kujawa (1954), 153 Tex. 314, 268 S.W.2d 122; Hayes v. Nichols (Tex.Civ.App., 1947), 203 S.W.2d 274; Johnson v. Allen (Tex.Civ.App., 1955), 285 S.W.2d 771, no writ; Edwards v. Strong (1948), 147 Tex. 155, 213 S.W.2d 979; Frozen Foods Express v. Odom (Tex.Civ.App., 1950), 229 S.W.2d 92, cr. ref., n. r. e.; Fisher v. Leach

(Tex.Civ.App., 1949), 221 S.W.2d 384, er. ref., n. r. e.; Casas v. Knorbin (Tex.Civ. App., 1949), 218 S.W.2d 289, no writ; Allen v. American National Ins. Co. (Sup.Ct., 1964), 380 S.W.2d 604. Appellants' objection to Special Issues 1 and 2 pointed out to the Trial Court no reasons why the Issues were defective. It is not apparent to this Court, from the objection made, why the mere omission of the reference to the written application dated January 26, 1961, made the Issues defective. The jury could hardly have been misled by such omission inasmuch as neither party contended there was any application for a loan by Appellants, for which suit was brought, other than Appellants' application dated January 26, 1961, to the General American Life Insurance Company. An objection to an Issue must make clear to the Trial Court the nature and object of the complaint so that the Court is given a fair opportunity to correct the Issue if the objection is tenable. Appellants' objections to Special Issues 1 and 2 did not comply with the Rule 274. Not having made any objections to Special Issue No. 3 prior to submission of the case to the jury, Appellants are not in a position here to question it as to any defect, omission or default in pleading. Nor will the fact that Appellants' requested Special Issues in a form they assert is more desirable than those submitted benefit the Appellants because a mere *request* for an Issue will not suffice as an *objection* to an Issue submitted. Objections and Request for Submissions are not alternative permissible modes of making an objection to the Court's Charge. To be effective, an objection must be made. City of Dallas v. Priolo (1951), 150 Tex. 423, 242 S.W.2d 176; City of Denton v. Hunt (Tex.Civ.App., 1950), 235 S.W.2d 212, er. ref., n. r. e.; Texas State Highway Department v. Reeves (Tex.Civ.App., 1942), 161 S.W.2d 357, er. ref. For the reasons stated, Appellants' objections to the Charge do not present error.

Error is claimed in the failure of the Court to submit Appellants' five requested

Special Issues. Three of these requests were as follows:

"Do you find from a preponderance of the evidence that Defendants, James Stuckey and Glen Bowman through James Stuckey, orally contracted with Plaintiff, Union Mortgage & Investment Company, to secure a loan commitment from General American Life Insurance Company on or about January 26, 1961, in accordance with the terms of the written loan application dated January 26, 1961, and submitted to General American Life Insurance Company?

"Do you find from a preponderance of the evidence that Plaintiff, Union Mortgage and Investment Corporation secured a loan commitment from General American Life Insurance Company for Defendants, Bowman-Stuckey properties in accordance with the terms of a written application dated January 26, 1961, directed to General American Life Insurance Company?

"Do you find from a preponderance of the evidence that defendant Bowman-Stuckey properties agreed to pay plaintiff, Union Mortgage & Investment Company, Inc., the amount of $2250 on the loan commitment secured for defendants by plaintiff?"

■■ Rule 279, Texas Rules of Civil Procedure, provides that the failure to submit an Issue shall not be deemed a ground for reversal unless its submission in substantially correct wording has been requested in writing by the complaining party. The Rule contains, however, a proviso that an objection to such failure shall suffice if the Issue is one "relied upon by the opposing party." The above requested Issues, regardless of whether in substantially correct wording, were Issues "relied upon by the opposing party" because they constituted a ground of recovery or elements thereof by Appellee. Therefore, in order to complain of the omission of such Issues, it was neces-

sary only that Appellants object to their omission from the Charge. If the Issues submitted by the Court were defective, Appellants had the duty to object to them, Rule 274, T.R.C.P. Appellants, therefore, now complain of the omission from the Charge of Special Issues "relied upon" by Appellee. The omission of such Issues can hardly be prejudicial to Appellants. They would be better off if the Issues were never decided. Such omissions are rarely prejudicial to the complaining party. Hodges, Special Issue Submission in Texas, p. 179. Moreover, the record does not reflect that Appellants objected to the Charge because of its failure to include the Issues and accordingly, for the reasons stated, no grounds for reversal are shown. Texas Employers' Insurance Ass'n. v. Neuman, (Sup.Ct., 1964), 379 S.W. 2d 295; Rule 279, T.R.C.P.

Appellants requested the following Issue:

"Do you find from a preponderance of the evidence that the loan commitment submitted by Union Mortgage and Investment Company to Bowman Stuckey Properties, dated February 24, 1961, was conditional and subject to receipt of a new lease on the medical clinic known as MacGregor Medical Clinic."

■ If it can be said that the above requested Issue is an ultimate Issue which presented Appellants' defense, or an element thereof, raised by the pleadings and evidence, the Trial Court's refusal to submit the same was proper inasmuch as the Issue was not "in substantially correct wording" as required by Rule 279, supra. The quoted language means "in such form as the Court could properly submit as presented." Thomas v. Billingsley, (Tex.Civ.App., 1943), 173 S.W.2d 199, er. ref. The requested Issue was deficient in the following respects: (a) whether the loan commitment dated February 24, 1961, referred to was "conditional" constituted a question of law; (b) the same required the jury to pass upon the legal effect of a written instru-

ment; and (c) the Issue, as framed, was multifarious, containing more than one inquiry.

The last Issue requested by Appellants is as follows:

"Do you find from a preponderance of the evidence that Plaintiff, Union Mortgage & Investment Company failed to provide an unqualified loan committment from General American Life Insurance Company to Defendants, Bowman-Stuckey, properties in accordance with the written loan application dated January 26, 1961."

This Issue, likewise, was not "in substantially correct wording" under Rule 279 and its submission was properly refused. The requested Issue as framed called upon the jury to determine the legal question as to whether the loan commitment submitted to Appellants by Appellee was in "accordance" with the written loan application dated January 26, 1961, and whether it was "unqualified." It is held that Issues which require a jury to pass upon legal questions or the legal effect of written instruments are properly refused. Newton v. Gardner (Tex.Civ.App., 1949), 225 S.W. 2d 598, er. ref., n. r. e.; Cole v. Waite (1952), 151 Tex. 175, 246 S.W.2d 849; Alamo Casualty Co. v. Trafton (Tex.Civ. App., 1950), 231 S.W.2d 474, no writ.

Appellants' fourth Point of Error complains of the Trial Court's action in overruling their Motion to Disregard Jury Findings on the grounds that the three Issues answered by the jury were "incomplete and inconclusive." The Motion referred to asserted that the three Issues submitted by the Court were in "conflict" because the Court "would of necessity have to presume, surmise and speculate upon the meaning of Special Issues Nos. 1 and 2 if attempting to connect or associate them with Special Issue No. 3."

A party who seeks to set aside a verdict on the grounds of conflicting an-

swers must show that one of the conflicting answers, when considered in connection with the rest of the verdict, excluding the Issue with which it allegedly conflicts, necessarily requires the entry of a judgment different from that which the Court has entered. Little Rock Furniture Mfg. Co. v. Dunn (1949), 148 Tex. 197, 222 S.W.2d 985; Bradford v. Arhelger (1960), 161 Tex. 427, 340 S.W.2d 772. Appellants do not attempt to demonstrate that under this test there exists any fatal conflicts in the verdict. It is the duty of the Trial Court, where conflicting answers exist, to reconcile them if possible. Perkins v. Mitchell (1954), 153 Tex. 368, 268 S.W.2d 907; Ford v. Carpenter (1949), 147 Tex. 447, 216 S.W.2d 558. The verdict should not be set aside on this ground unless the answers are in such irreconcilable conflict as to be mutually destructive. Southwest Bitulithic Co. v. Dickey (Tex.Civ.App., 1930), 28 S.W.2d 264, no writ. The Issues submitted by the Court established (1) that Appellants orally contracted with Appellee to secure a loan commitment; (2) that Appellee, in accordance with such oral contract, secured a loan commitment for Appellants; and (3) Appellants agreed to pay Appellee a fee in a stipulated amount contingent upon Appellee securing a loan commitment for Appellants from General American Life Insurance Company in accordance with the conditions of the written loan application dated January 26, 1961. If any one of said Issues be disregarded, the remaining Issues would not compel the entry of a judgment for Appellants, or a judgment differing from the one entered. If Special Issues 1 and 2 inquire about a transaction differing from that inquired about in Special Issue 3, a party has the right to submit to the jury alternate grounds of recovery or of defense. It cannot be said that the Issues here are either mutually destructive or present an irreconcilable conflict.

Although Appellants object in terms of "conflict," as we analyze the Point of Error, the real complaint is that the answers to the three Issues submitted do

not establish for Appellee a complete ground of recovery. The answers to Special Issues 1 and 2 established, respectively, the making of the oral contract and its performance by Appellee. The only real dispute between the parties, as developed in the evidence, related to whether Appellee had performed its oral agreement to procure the loan commitment. Ample evidence raised the Issue as to whether Appellants had accepted Appellee's loan commitment as a "performance" of the contract or, if the commitment varied materially from the loan application, the jury was authorized to find under Special Issue No. 2 that Appellants had ratified the changes. Ratification, under the facts of this case, at least was an Issue tried by implied consent because Appellants failed to make a timely exception to Appellee's pleadings, and failed to object to the submission of Special Issue No. 2 on tenable grounds. Moreover, Appellants did not object to the evidence relating to ratification or acceptance by Appellants of the performance and, therefore, are in no position to question it here. Rule 67, T.R.C.P.; Miller v. Keyes (Tex.Civ.App., 1948), 207 S. W.2d 257, no writ; Morris Plan Life Insurance Company v. Wells (Tex.Civ.App., 1963), 367 S.W.2d 410, no writ.

■ Aside from the reasons above stated, the judgment entered below may likewise be sustained under the "presumed findings" provision of Rule 279, T.R.C.P. If the commitment procured by Appellee for Appellants varied materially from the application made, the Issue of ratification of the changes by Appellants was necessarily referable to the Issues submitted and will be deemed found by the Court in such a manner as to support the judgment. Appellants made no objection to the omission of such Issue from the Charge and made no request for its submission to the jury. Rodriquez v. Zavala (Tex.Civ.App., 1955), 279 S.W.2d 604, no writ history; 3 McDonald, Texas Civil Practice, 1157; Bigelow v. Rupp (Tex.Civ.App., 1946), 192 S.W.2d 791, writ ref., n. r. e. A closely analogous case is found in A A A Air Conditioning &

Mfg. Corporation of Texas v. Barr (Tex. Civ.App., 1944), 186 S.W.2d 825, er. ref. In the cited case, the Plaintiff brought suit upon an oral contract of employment. Its existence, as well as performance thereunder, was denied. The Trial Court submitted one Issue inquiring as to whether the oral contract had been made. The second Issue, inquiring as to performance, was so conditioned that the jury was not required to answer it. Judgment was rendered for Plaintiff. In sustaining the judgment, the Court held that the rendition of the personal services (performance) was but an element or component part of Plaintiff's recovery, and authorized the Court to resolve the Issue in such a manner as to support the judgment. In our opinion, if it can be argued that there is no jury finding of "performance" by Appellee, under the circumstances, such a finding will be deemed to have been found by the Trial Court in such a manner as to support the judgment. Our conclusion in this regard disposes also of Appellants' sixth Point of Error.

■ By their seventh and last Point of Error, Appellants make the general complaint that the Trial Court erred in "Overruling Defendant's Motion for New Trial based upon the Assignment of Errors Contained in such Motion." It is well established that Rule 418, T.R.C.P., requires a Point of Error to direct the attention of the Court to the particular error relied upon. Such point must not be multifarious or too general. Appellants' Motion for New Trial contained eleven Assignments of Error. Appellants' seventh Point, therefore, is multifarious and too general and does not merit consideration. Dallas Fountain and Fixture Company v. Hill (Tex.Civ.App., 1960), 330 S.W.2d 648, er. ref., n. r. e.; Tindall v. Tacconelly (Tex.Civ.App., 1959), 328 S.W.2d 909, er. ref., n. r. e.; Wagner v. Foster (1960), 161 Tex. 333, 341 S.W.2d 887; Rule 418, T.R.C.P.

Finding no reversible error in the Points presented, the judgment of the Trial Court is affirmed.